768 P.2d 1340

**Tracy BAXTER and Sharon Baxter, husband and wife, Plaintiffs/Respondents,**

v.

**The CITY OF PRESTON, Defendant,**

and

**Thayne Corbridge and Colleen Corbridge, husband and wife; Verlan Corbridge and Rena Corbridge, husband and wife, Defendants/Appellants.**

**No. 17301.**

Supreme Court of Idaho.

Feb. 13, 1989.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendants/appellants. Gary L. Cooper argued.

A. Bruce Larson, Soda Springs, for plaintiffs/respondents.

BISTLINE, Justice.

This is a zoning case. Prior to 1984, defendant Thayne Corbridge allowed about 20 head of cattle to graze on two abutting parcels of his land. The parcels are separated by a concrete drainage ditch. Corbridge would farm the western parcel, and once harvested, the cattle would graze on

both. Prior to 1984, the cattle were not fed hay or silage on the parcels, nor were they stored there through the winter. In 1984 Corbridge constructed a portable manger and a shed on the eastern property. Manure accumulated. He hauled hay to the cattle and kept them on the premises throughout the year. In essence Corbridge set up a feed lot. The trial court granted plaintiff Baxter's request for an injunction requiring Corbridge to return to his pre–1984 method of farming on the basis that the use of the premises on a year round basis is an expansion or extension of a nonconforming use in violation of a Preston city zoning ordinance. *We affirm.*

## I.

The City of Preston, effective February 15, 1979, adopted Zoning Ordinance No. 443, which established the following zones in the city: Residential, Transitional, Business, and Industrial. All of the property here involved falls within the "transitional" zone. The ordinance was intended to create a transitional buffer zone between agricultural areas and residential development. Conforming uses in the transitional zone are residential; all others are nonconforming. Chapter 1, § 6 of the ordinance provides that the "zoning pattern is not intended to eliminate agriculture uses within the city. It is, however, intended to discourage the establishment of new agricultural operations within the city limits." Chapter 3 also provides:

> Section 1—Intent. It is the intent of this ordinance to permit nonconforming uses to continue until they are removed but not to encourage their survival. It is further the intent of this ordinance that nonconforming uses shall not be enlarged upon, expanded or extended nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district.

As noted, Corbridge (and his family) own two abutting properties separated by a concrete drainage ditch. The western parcel is used for raising crops, principally corn and alfalfa. The eastern parcel was used, prior to 1984, solely for livestock grazing.

Corbridge acquired his properties in 1969. He grazed about 20 head of cattle on grass or crop residue, but prior to 1984 the cattle were never housed through the winter or fed silage on the property. In 1984 Corbridge constructed a portable manger, fed cattle, and kept livestock on the eastern parcel throughout the year. Manure accumulated.

Plaintiff Baxter tried unsuccessfully to get the City of Preston to enforce the ordinance against Corbridge. The city refused. Baxter thereafter brought suit against both the city and Corbridge. The action against the city was dismissed with prejudice after the city agreed that if Baxter was successful in the action against Corbridge, the city would enforce the ordinance.

The trial court held: that Corbridge's historical use, and the use which he is entitled to continue under the ordinance, is limited to 20 head of cattle to forage on the eastern parcel in the summer; that after harvesting, the 20 cattle can forage on both the east and west parcels; that once snowfall makes grazing unfeasible, the livestock must be removed; and that Corbridge's conduct in the use of the parcels on a year round basis (*i.e.*, storing and feeding the cattle) is an "expansion or extension of a nonconforming use prohibited" by the ordinance. Finally, the trial court ordered Corbridge to remove the portable manger, holding corrals, accumulated manure, silage and feed on the eastern parcel. Corbridge has appealed from that determination.

## II.

■ The trial court ruled that Corbridge's use of his property constituted an unlawful nonconforming use. "Nonconforming use" means a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance

even though not in compliance with use restrictions. 6 Rohan, *Zoning and Land Use Controls* § 41.01[1] (1978). As a general proposition, the due process clauses of the state and federal constitutions require that once a zoning ordinance is enacted, nonconforming uses be allowed to continue. *Glengary–Gamlin Protective Ass'n. v. Bird*, 106 Idaho 84, 675 P.2d 344 (Ct.App. 1983); *Boise City v. Blaser*, 98 Idaho 789, 572 P.2d 892 (1977); *O'Connor v. City of Moscow*, 69 Idaho 37, 202 P.2d 401 (1949).[1]

■ This "grandfather right," as stated in *Bastian v. City of Twin Falls*, 104 Idaho 307, 309, 658 P.2d 978, 980 (Ct.App.1983), "simply protects the owner from abrupt termination of what had been a lawful condition or activity on the property. *The protection does not extend beyond this purpose.*" (emphasis added); *see also Glengary, supra*, 106 Idaho at 90, 675 P.2d at 350. The owner of a nonconforming use may lose the protected grandfather right if the use is enlarged or expanded in violation of a valid zoning ordinance. D. Mandelker, Land Use Law 2d § 5.61 (1988). Thus, the issue now before the Court is whether, under Preston Ordinance No. 443, Corbridge's change in the utilization of his property from its former use of merely grazing cattle, to thereafter establishing a feedlot on the property, is of such character that it now constitutes an unlawful nonconforming use.

Some states, such as Massachusetts and Virginia, have devised "tests" for determining whether a nonconforming use has been extended or enlarged unlawfully. *E.g., City of Revere v. Rowe Contracting Co.*, 362 Mass. 884, 289 N.E.2d 830 (1972); *Knowlton v. Browning–Ferris Indus.*, 220 Va. 571, 260 S.E.2d 232 (1979). In our view, however, it is better to adopt a flexible approach which focuses on the character of the expansion and enlargement of

the nonconforming use on a case by case basis. As the Supreme Court of California has stated: "In determining whether a nonconforming use was the same before and after passage of a zoning ordinance each case must stand on its own facts." *Edmonds v. Los Angeles County*, 40 Cal.2d 642, 255 P.2d 772, 777 (1953) (quoted in 4 Rathkopf, *The Laws of Zoning and Planning*, § 51.06, at 68 (1988)).

Corbridge argues that the operation of a feedlot is an agricultural use just as grazing cattle is an agricultural use. Thus, so the argument goes, due process does not permit such a "flimsy distinction" between grazing and feeding cattle because the nature of the operation has remained unchanged: agriculture. Appellants' Brief at 34.

■ The dispositive factor, however, is not into which general classification a use can be pigeonholed, but the character of the particular use. Otherwise, a property owner in an "industrial" zone manufacturing thumbtacks could thereafter produce automobiles solely on the basis that both are industrial endeavors. An analysis which focuses on the character of the particular use, not the general classification, is used elsewhere. See, *e.g., Village of Burr Ridge v. Elia*, 65 Ill.App.3d 827, 22 Ill.Dec. 486, 382 N.E.2d 876 (1978) (in considering whether a legal nonconforming use has changed such that it has lost that status, court held that although new and old uses may fall within the same general category, such as manufacturing, it is the particular use and not the general classification which governs).

As a general rule, the mere "intensification" of a nonconforming use does not render it unlawful. *Prince George's County v. E.L. Gardner, Inc.*, 47 Md.App. 471, 424 A.2d 392 (1981) (a distinction is to be drawn between enlargement or extension of non-

---

1. Judicial review of zoning cases is well-settled. Questions of fact supported by substantial competent evidence will not be disturbed on appeal. *Gordon Paving Co. v. Blaine County Bd. of County Commissioners*, 98 Idaho 730, 572 P.2d 164

(1977). On questions of law we exercise free review. *Idaho Appellate Handbook* § 3.2, *Standards of Appellate Review in State and Federal Courts* (1985).

conforming uses and an intensification of such lawful uses, in that the latter may be permissible while the former is not); *Heagen v. Borough of Allendale*, 42 N.J.Super. 472, 127 A.2d 181 (1956) (increase in volume of business is not illegal extension); *Cullen v. Building Inspector of North Attleborough*, 353 Mass. 671, 234 N.E.2d 727 (1968) (mere increase in amount of business done is not in itself proof of unlawful change).

In contrast to "intensification" are the concepts of "expansion and enlargement" of the nonconforming use. Expansion and enlargement of a nonconforming use contrary to a properly enacted zoning ordinance is unlawful. For example, in *Cullen, supra,* the owner of a dairy farm increased his herd ten-fold, doubled the amount of land used, erected new buildings, and installed a new system of milk production. The court held that although mere increase in business is not *per se* proof of change of use, the expansion of the dairy farm was so great in the aggregate that it constituted an unlawful nonconforming use. *Cullen, supra,* 234 N.E. 2d at 730. We reach a similar result in this case. Corbridge has substantially enlarged and expanded the character of the property's use in violation of the Preston zoning ordinance.

### III.

■ First, the trial court found that as a result of the feedlot operation established by Corbridge manure on the property accumulated, thereby annoying neighboring property owners. As Professor Rathkopf states:

It will have been noted that in most of the cases involving changes which were held to be unlawful in theretofore permitted nonconforming uses, the subsequently adopted use had the potentiality for greater adverse impacts upon neighboring properties. The difference might *lie in* an increase in the traffic or noise generated, or in greater activity in and about the premises, or in other consequences of a more intensive use.

Rathkopf, *supra, The Law of Zoning and Planning* § 51.06 at 78–79 (1988). *See also, Knowlton, supra,* 220 Va. 571, 260 S.E.2d 232 (1979) (increase in size of business brought more traffic to neighborhood, thus imposing child traffic hazard). While the trial court explicitly did not find a nuisance in the instant case, the court did properly consider the fact that accumulated manure had an immediate effect on the neighboring owner's comfort and utility of their residences, and thus contributed to an illegal change in use.

Second, the Preston ordinance specifically prohibits the construction of additional *structures* to further a nonconforming use.[2] Corbridge erected a portable manger and replaced a "loafing shed" on the property in 1984. Accordingly, the trial court did not err in ordering Corbridge to remove the new structures. *See Rathkopf, supra,* § 51.07 at 99 ("The rule against enlargement or expansion also precludes the erection of new buildings or structures for utilization of the non-conforming use, either in replacement of the original buildings or in addition thereto."); *Johnny Cake, Inc. v. Zoning Bd. of Appeals,* 180 Conn. 296, 429 A.2d 883 (1980) (construction of high radio antenna mast in place of obsolete nonconforming fire watch tower an unlawful extension); *Seekonk v. Anthony,* 339 Mass. 49, 157 N.E.2d 651 (1959) (right to maintain nonconforming quarry did not include right to expand by adding nonconforming blacktop facility).

Finally, the character of the use has changed. Up until 1984, no cattle were kept on the property year-round. Further, whereas grazing cattle simply forage on plants growing on the property, under the feedlot arrangement the feed must be hauled to the cattle. In light of these differences, in addition to the accumulated manure and new structures built on the property, the trial court did not err in con-

2. *See* Ch. 3 § 2, quoted in full, *supra.*

cluding that the expansion and enlargement in the character of Corbridge's use were substantial and therefore in violation of Ordinance No. 443.

Whether the city of Preston's zoning ordinance constitutes sound public policy is no concern of ours. Our sole inquiry is whether the ordinance, as applied to Corbridge's property by the trial judge, is repugnant to the guarantees of due process. We hold that it is not and therefore affirm the judgment and order of the district court.

*Affirmed.* Costs on appeal to respondents; an award of claimed attorney fees is inappropriate.

SHEPARD, C.J., JOHNSON, J., and McQUADE and BOYLE, JJ. Pro Tem, concur.