860 P.2d 8

**Thomas R. TAYLOR and Thelma M. Taylor, husband and wife, Plaintiffs–Respondents,**

v.

**BOARD OF COUNTY COMMISSIONERS, County of Bonner, State of Idaho, Defendants–Appellants,**

and

**Merritt Brothers Lumber, Inc., an Idaho corporation, Intervenor–Appellant.**

No. 19415.

Court of Appeals of Idaho.

July 30, 1993.

Addendum Denying Rehearing Sept. 30, 1993.

Jerry D. Mason, Coeur d'Alene, for Bonner County; Cooke, Lamanna, Smith & Cogswell, Priest River, for Merritt Bros. Lumber, Inc. Jerry D. Mason and Thomas E. Cooke argued.

Hugh Garret Jacobs, Hayden Lake, for plaintiffs-respondents.

SWANSTROM, Judge.

This is an appeal from a district court decision reversing a zoning change ordered by the Bonner County Board of Commissioners (Board) at the request of Merritt Brothers Lumber, Inc. (Merritt) in 1989. The Board enacted an ordinance rezoning two parcels of real property owned by Mer-

ritt from suburban to industrial. Thomas and Thelma Taylor (Taylors) appealed the zone change decision to the district court which reversed the Board's decision and declared the ordinance void. The Board appealed that decision, and Merritt joined the appeal as an intervenor. For reasons given below, we vacate the Board's decision and remand the case to the Board for further findings.

## FACTS AND PROCEDURE

In 1968, Merritt acquired a small stud mill and several acres adjacent to the City of Priest River in Bonner County, Idaho. A mill had been operated on that site at least as early as 1959. Merritt continued to operate, expand and upgrade the lumber mill after its acquisition.

In 1978, Bonner County adopted a Comprehensive Plan in conformity with the Local Planning Act of 1975. As required by the Act, the County enacted a general county-wide zoning ordinance, Ordinance No. 140, effective July 1, 1980.[1] By this ordinance, the Merritt mill site and adjacent real property involved in this action were zoned suburban. No "industrial" districts or zones were created by the ordinance. The operation of a sawmill was not a permitted use within a suburban district.

After July 1, 1980, the Merritt mill continued to operate as a nonconforming use within the suburban district. During these years Merritt acquired additional parcels of real property which were incorporated into the mill's operation. The expanded site of 28.47 acres now includes a sawmill, planer mill, dry kilns, a boiler, maintenance shops, office space, log and lumber storage areas, and parking for trucks and workers' vehicles. Under Merritt's ownership, the mill's daily production has grown from 20,000 board feet of lumber to 500,000, and the number of employees has increased from a few to 125.

Merritt's expansion of the mill's operations was not universally acclaimed. By 1987, some neighboring homeowners complained to county officials that Merritt's expansion into their subdivision was in violation of county building and zoning laws. There is evidence in the record, which Merritt does not dispute, that after July 1, 1980, Merritt built additional structures and purchased adjacent real property without seeking any approval from county building and zoning officials. For the purposes of this appeal we can assume that Merritt's past action constituted improper expansion of a nonconforming use. In any event, the complaints made to county officials prompted Merritt to apply for a zone change for the mill site. In 1987, the Board granted the request, rezoning the 28.47 acres on which the mill operated at that time from suburban to industrial. Thomas and Thelma Taylor, neighbors who had opposed the requested change, appealed the change order to the district court. In February, 1989, the court reversed the Board's order, holding that the Board had failed to make adequate findings, and remanded the case. That decision was not appealed.

In March and May, 1989, Merritt made two new zone change applications. Application CZ 164–89 covered the identical site for which the 1987 zone change application was made. Application CZ 162–89 was for an adjoining 13.15 acre parcel west of the mill site, which recently had been acquired by Merritt. Merritt requested these two parcels be rezoned to an "industrial" district "to facilitate an already existing mill and its necessary ability to expand its operations" and "to expand [its] employee and equipment parking."

The 28.47 acre parcel now includes a portion of the neighboring Springdale Gardens Subdivision lying east of the mill. First Street in that subdivision forms part of the present eastern boundary of the mill site. To the south lie rural residential tracts, but the number of residences, their density and their proximity to the mill site are not revealed in any detail by the record.

1. Some evidence in the record indicates that the effective date of Ordinance 140 was in January, 1980. The exact date is not critical to our opinion. We will assume that the date stated by the district court is correct.

The property to the west of the 13.15 acre parcel is relatively undeveloped timberland with scattered homesites in existence or projected for the future. A county highway running parallel to the Pend Oreille River forms the northern boundary of the mill site. The City of Priest River lies immediately to the north, across the river. A paved north-south highway bisects the mill site, crossing the river and leading directly into the City of Priest River.

After a public hearing and several public meetings, the Bonner County Planning and Zoning Commission (Commission) recommended, by split votes of its members, that the Board deny the zone change applications. Thereafter, the Board also held public hearings on the zone change applications. In a memorandum decision and order, the Board approved the zone change applications. The Board then enacted an ordinance changing the zoning designation of the two parcels, comprising forty-two acres, from suburban to industrial.

Again the Taylors appealed the Board's decision to the district court. Again the court reversed the Board's decision and further declared the rezoning ordinance void. The court concluded that the Board's grant of the zone change applications and enactment of the new zoning ordinance giving conforming status to the industrial use, was arbitrary, capricious and an abuse of discretion. The court reasoned that the Board's actions were improper because they violated the letter and spirit of the Bonner County Comprehensive Plan and Bonner County Ordinance 140 by giving conforming status to an unlawfully expanded nonconforming use. The court also held that the granting of the zone change applications and enactment of the new zoning ordinance constituted improper "spot zoning." This appeal by the Board followed.

## ISSUES

The Board, as the initial appellant, raises several issues relating to the district court's appellate decision: whether the district court erred by substituting its judgment for that of the Board; whether the court exceeded its authority by declaring that "nonconforming uses are to be eliminated over the long term not expanded;" whether the court erroneously applied the "spot zoning" doctrine because of Idaho's quasi-judicial model of deciding site-specific zoning requests; and whether the court erred in reversing the Board and in voiding the newly enacted zoning ordinance absent a documented finding that the Taylors' substantial rights were prejudiced.

Merritt, who did not participate in the appeal from the Board's decision to the district court, was granted permission by the Supreme Court to intervene in the present appellate proceeding. Merritt joins with the Board in appealing from the district court's decision. Merritt adopts the Board's issues and arguments and raises some additional issues discussed later.

The Taylors, who are respondents in the present appeal, raise additional issues pursuant to I.A.R. 35(b)(4). Their issues focus on the action of the Board, not upon the district court's appellate decision. The Taylors assert that the Board's approval of the zone change applications constituted an abuse of discretion, was arbitrary and capricious, violated the county comprehensive plan and zoning ordinance, and was invalid "spot zoning." We will combine issues where appropriate. Because our appellate standards direct us to review the Board's decision, and not that of the district court, we will address the allegations of error as they may apply to the Board. While we will consider the district court's decision, our review will be independent of it.

## STANDARD OF REVIEW

 The proper standard of review in an appeal from an adverse zoning decision made under the Local Planning Act of 1975 is contained in I.C. § 67–5215(b)–(g).[2]

---

**2.** Idaho Code § 67–5215(g) provides:
The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been preju-

*Bone v. City of Lewiston,* 107 Idaho 844, 693 P.2d 1046 (1984). "Since the district court was acting in its appellate capacity, in the appeal to this Court we can review the record independently of the district court's decision." *Ferguson v. Board of County Commissioners for Ada County,* 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986). We defer to the Board's findings of fact unless they are clearly erroneous. *Love v. Board of County Commissioners of Bingham County,* 108 Idaho 728, 730, 701 P.2d 1293, 1295 (1985). We will set aside findings if they are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." I.C. § 67–5215(g)(5). On questions of law we exercise free review. *Baxter v. City of Preston,* 115 Idaho 607, 609 n. 1, 768 P.2d 1340, 1342 n. 1 (1989).

## ARBITRARY AND CAPRICIOUS

■ The Taylors first contend that the Board's grant of the zone change application was arbitrary and capricious and an abuse of discretion. They contend that the Board "set out to legalize the illegal [expansion of Merritt's mill]." The Taylors rely in part on *Baxter v. City of Preston, supra.* In *Baxter,* the plaintiffs brought an action against defendants Corbridge and the city, contending that Corbridge had expanded his nonconforming agricultural use of property within the city and that the city was not enforcing its ordinances. Both the district court and the Supreme Court on appeal held that an agricultural nonconforming use was unlawfully expanded in violation of the city's zoning ordinance. In that case, the use was ordered to be scaled back to the level permitted by Corbridge's "grandfathered" status.

*Baxter* is different from the present case in two respects. First, the Taylors did not ask the district court to order that Merritt's nonconforming mill operations be scaled

diced because the administrative findings, inferences, conclusions, or decisions are:
(1) in violation of constitutional or statutory provisions;
(2) in excess of the statutory authority of the agency;
(3) made upon unlawful procedure;

back to the level existing on July 1, 1980, when the county-wide zoning ordinance became effective. Second, in *Baxter* no efforts were made by Corbridge or by the city to change the zoning ordinance to accommodate the existing use. Here, we are not asked to decide whether and to what extent a nonconforming use was expanded unlawfully by Merritt, but rather, we must decide whether the zoning change authorized by the Board was proper. We can say from the record that this latter question presents a close call, but we cannot agree with the Taylors' contention that the Board's action was "arbitrary and capricious."

The Taylors contend that the Board's conclusion that the 1980 suburban zoning designation of the real property at issue was improper was arbitrary and capricious. Similarly, the Board contends on appeal that the district court's reversal of its decision was arbitrary and capricious. Due to our standard of review, we will examine the Board's decision for alleged arbitrary action.

The Board's conclusion that the initial zone designation of suburban was erroneous is based upon historical use, namely, that the real property on which the mill is located has been used for industrial purposes long before the 1980 zoning ordinance. This provides no support for the Board's statement that the initial suburban designation was erroneous. The land use map, which is one component of the comprehensive plan, projects a recreational use for the area at issue and a suburban use for real property south of Merritt's property. The Board's conclusion that the suburban zoning was erroneous is not supported by substantial evidence.

■ The Board also reasoned that the comprehensive plan policies supported the *maintenance* of Merritt's industrial use.

(4) affected by other error of law;
(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

If Merritt intended to simply "maintain" its pre–1980 nonconforming use, it did not have to apply for rezoning because nonconforming uses are constitutionally protected. *O'Connor v. City of Moscow,* 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031 (1949). However, a nonconforming use is not allowed to expand, and if it unlawfully expands in violation of a valid zoning ordinance, the owner of the nonconforming use may lose the "grandfathered" right. *Baxter,* 115 Idaho at 609, 768 P.2d at 1342. The zone change applications covering the mill site, as well as the relatively undeveloped 13.15 acres to the west, were made because of Merritt's intention to expand its use. The record does not reflect any evidence indicating why the 1980 zoning as suburban, which was apparently enacted to preserve the residential character and disallow *expansion* of industrial use, was erroneous.

The Supreme Court has stated: "[n]ormally, a change in zoning will occur if there has been sufficient change in the surrounding neighborhood." *Ada County Highway Dist. v. Magwire,* 104 Idaho 656, 659, 662 P.2d 237, 240 (1983); *see also Ferguson v. Board of County Commissioners for Ada County, supra.* Because the Board did not find that circumstances in the neighborhood had changed, maybe it felt compelled to state that the initial zone was improper. The finding that the initial zoning was improper is clearly erroneous; however, we need not reverse the Board's decision to grant the zone change on this basis.

## "IN ACCORDANCE WITH" THE COMPREHENSIVE PLAN

■ The Taylors next contend that the applications for rezoning are in conflict with the comprehensive plan. Idaho Code § 67–6511 governs zoning ordinances. In *Bone v. City of Lewiston, supra,* the Supreme Court interpreted this statute. In *Bone* the applicant sought to have his real property zone changed from residential to commercial. The city's land use map, one component of the comprehensive plan, showed a commercial zoning designation for Bone's real property. Bone contended that the city erred in denying his zone change application to commercial which would have brought the zoning designation in conformance with the land use map. The Supreme Court stated:

> Our holding that "in accordance with" does not require that the governing bodies, as a matter of law, zone their land as it appears on their land use maps does not mean that such bodies can ignore their comprehensive plans when adopting or amending zoning ordinances. Section 67–6511 requires governing bodies to zone in accordance with their comprehensive plan. We hold that "in accordance with" is a question of fact. What a governing body charged to zone "in accordance with" under § 67–6511 must do is make a factual inquiry into whether the requested zoning ordinance or amendment reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the present factual circumstances surrounding the request.

*Bone,* 107 Idaho at 850, 693 P.2d at 1052.

This statement from *Bone* was repeated in *Balser v. Kootenai County Board of Commissioners,* 110 Idaho 37, 39, 714 P.2d 6, 8 (1986), and in *Ferguson v. Board of County Commissioners for Ada County,* 110 Idaho at 787, 718 P.2d at 1225. Unlike *Bone,* in *Ferguson* the applicants were not seeking to have their real property zoned as it was shown on the comprehensive plan. Rather, the applicants were asking that their property, zoned as suburban in the plan, be rezoned to commercial. Since adoption of the comprehensive plan, the surrounding tracts had all been rezoned at various times to allow for commercial development. In spite of the factual differences, the Supreme Court found the reasoning in *Bone* still applicable and upheld the Board's decision to rezone the applicants' property, contrary to the designation of the comprehensive plan. The Court repeated what it had said in *Bone:* the law does not require "that a zoning amendment must conform exactly to the existing com-

prehensive plan." *Ferguson,* 110 Idaho at 788, 718 P.2d at 1226.

As we stated in *Bone,* the question of whether a zoning ordinance is "in accordance with" the comprehensive plan is a factual question which can be overturned only where the factual findings are clearly erroneous. The governing body charged with zoning—in this case the board of county commissioners—must make a factual inquiry to determine whether the requested rezone reflects the goals of, and takes into account those factors in, the comprehensive plan *in light of the present factual situation surrounding the request.*

110 Idaho at 787–88, 718 P.2d at 1225–26 (emphasis added).

The "present factual situation" in *Ferguson* was the commercial development of surrounding properties, leaving the applicants' property "an island of agricultural land in the midst of a sea of commercial and residential development." *Id.* "This Court's case law has made it clear that reclassification of individual property is valid when nonconforming uses are so pervasive that the character of the neighborhood has actually changed from the purported zoning classification." *Id.*

It should be noted that, in *Balser,* the Court said that even when the requested change is to a zone designation which is specified by the comprehensive plan, whether to amend an existing ordinance so as to make it conform to the plan is a determination "committed to the sound discretion of the governing body, subject only to judicial review *on the record* pursuant to the guidelines of I.C. § 67–5215(b)–(g)." 110 Idaho at 39, 714 P.2d at 8 (footnote omitted).

Thus, in at least three cases involving requested zone changes for individual parcels of property—*Bone, Balser* and *Ferguson, supra*—the Supreme Court has upheld a Board's decision which did not strictly conform to the land use designated by the comprehensive plan.

We will now address whether the zone change is "in accordance with" the compre-

hensive plan in the present case. In doing so, we need to determine whether the Board made the "factual inquiry" related to the goals of the comprehensive plan, as mandated by *Bone.* We must determine whether adequate findings were made by the Board, and whether those findings are supported by sufficient evidence in the record.

The comprehensive plan, included in our record, addresses a number of different broad community goals. Among them is: "to provide suitable areas for the growth of commercial and industrial development." The plan states that future industry should be located near major road networks and existing industrial sites. Specific objectives of the "community design goal" of the plan are to direct "new development to locate in areas with similar densities and compatible uses," and to have new development "minimize the adverse impacts on adjacent areas." The plan also states that the county intends to maintain or enhance the present water quality.

The plan makes it clear that it is to be utilized by the county as a *general guide.* The plan states that the land use "map allows for future development to evolve freely at a minimum expense to taxpayers." The Plan anticipates growth and change but the first major theme of the Plan is to preserve the qualities "that make Bonner County a desirable place to live, ... a sensible approach to growth must be established.... The second major theme to the plan and map is flexibility.... As an area continues to grow, the land use classification of that area can be changed to accommodate the demand for more intense use of the land." However, the plan also provides that, "[t]he proposed land use map and matrix are also designed to give the residents in differ[e]nt areas of the County the opportunity to maintain the kind of living environment or community they desire."

The comprehensive plan contains a proposed land use map and a "proposed land use matrix," neither of which show that any lands are classified as "industrial." The map and matrix show five land use classifications: urban, transition, subur-

ban, rural and recreation. Both heavy and light industry are permitted in urban zones, and both are allowed as "conditional uses" in the rural and recreation zones. Industry is not a permitted or allowed use in a suburban zone. Bonner County Zoning Ordinance No. 140, which was enacted to implement the plan, does provide for industrial zones or districts but, apparently, none were created when the ordinance was adopted. The official county zoning maps are not a part of the appellate record.

In its written decision and order, the Board found that the zone change applications accorded with the plan in general and specific respects. The Board found that the present mill site is more suitable for industrial development than an isolated rural location would be; the minimal expansion of the already existing industrial use would not materially damage natural resources; the zone change would produce lesser impacts upon adjoining land uses than comparable sites, because the site had been used as a mill for many years and because of the well-established transportation network consisting of busy public roads which run through or along the present mill site. Existing public utilities and services, such as water and electrical supplies, fire protection and health and emergency services are already in place and are adequate for the intended industrial use of the site. The Board also found that an industrial site such as this, which would be allowed to change and grow as necessary, is an asset to Bonner County.

The Board's finding that the transportation network is adequate for the proposed zone change is supported by substantial evidence. The mill site lies just south of the City of Priest River which is accessed via the upgraded bridge crossing the Pend Oreille River. The Board found that the proposed zone change to industrial would have a beneficial economic impact upon the county. The overwhelming majority of testimony at the Board's hearing strongly supported the use as a necessary component of the economic health of the Priest River area. The Board found that the area in question does not contain natural re-

source characteristics which would be adversely affected by the proposed zone change to industrial given applicable standards for water quality imposed by the Idaho Department of Environmental Quality. The Board also found that the public services of the county would be minimally impacted because of the marginal change in the use of the real property. These findings are also supported by substantial evidence. The Board found that the biggest objection to or foreseeable problem with the proposed zone change was the potential conflict with other long existing land uses, namely the adjoining residential home owners. In this area we must agree with the district court's rulings to the effect that the Board's findings were less than adequate.

Although the record reveals that there is a good transportation network consisting of two major county roads, the record also reveals that continued expansion of the mill has adversely affected the residential character of surrounding real property. It is clear that Merritt's expansion has brought its activities, including particularly storing logs in log decks, closer to residential properties. As noted earlier, the 28.47 acre parcel now includes a portion of the neighboring Springdale Gardens Subdivision. First Street in that subdivision forms part of the present eastern boundary of the mill site. A number of homeowners testified before the Commission and the Board that the past encroachment of Merritt's activities has diminished the residential character of the area, and that a zone change to industrial would do further harm.

The Board noted, and we think correctly, that this is the one area where it is difficult to reconcile the encounter between the industrial and residential uses recognized in the comprehensive plan and zoning ordinance.

The comprehensive plan sets forth several goals, some of which conflict. While the Board's decision to approve the zone change is in accordance with some of the goals of the comprehensive plan, it is not in accordance with the goal of limiting new development to areas with similar densities

and uses. In this case, the Board found that the zone change applications are in accordance with some goals of the comprehensive plan, yet did not find them to be in accordance with other goals. Where the Board's findings do not establish that the zone change applications are completely in accordance with the comprehensive plan, it is difficult for a reviewing court to affirm the Board's decision that the zone change applications are "in accordance with" the comprehensive plan. In this case, however, we do not have to reach that determination because the Board has failed in other respects as discussed below.

## PROCEDURES PURSUANT TO ORDINANCE 140

■ The Taylors also contend that the decision and procedures utilized by the Board violated Ordinance 140. Section 4.04 of the ordinance groups together the prerequisites for a variety of applications.[3] Likewise, section 4.05 groups together the means for evaluation of these various applications.[4] The Taylors' contention that the Board did not mandate strict compliance with these two sections is supported by the record.

The Taylors contend on appeal, as they did at the hearings, that Merritt did not submit a narrative statement as provided for in section 4.04(B). The record reflects,

however, that Merritt did make narrative statements in its two zone change applications, though they were brief. Counsel for the Taylors at the proceedings below also argued that the zone change applications should not be considered because Merritt had not submitted detailed site plans as required by section 4.04(A). We agree that site plans are required, particularly for a requested change to an industrial zone. We disagree with representatives of the Board who suggested that such plans were unnecessary in these circumstances. Our record does not contain any site plans outlining every item described in section 4.04(A); however, the record does contain scaled maps submitted by Merritt indicating the relevant lots, roads, and where its office buildings are as well as the mill site. We hold that there was substantial compliance with section 4.04(A), particularly in the absence of any showing that the deficiencies caused the Taylors any ensuing prejudice.

The Board's memorandum decision states how it interpreted the ordinance and its reasons therefor:

Not *all* provisions of section 4.05 are applicable to *all* applications made pursuant to section 4.04. Variance requests typically *do not* raise comprehensive plan issues. Zone change requests, and zone change procedures following the dictates of Ordinance # 140, are not provided a

---

**3.** Ordinance 140 § 4.04 provides:

*Section 4.04 Applications*
Applicants for zone change, conditional uses, variance, and development permits shall submit the following:

A) A plan of the proposed site, drawn to scale, showing location of all buildings, parking and loading areas, traffic access and circulation, undisturbed areas, open spaces, landscaping, refuse and service areas, utilities, signs and yards.

B) A narrative statement that addresses:
1. The effects of such elements as noise, light glare, odors, fumes, and vibrations on adjoining property.
2. The compatibility of the proposal with the adjoining land uses.
3. The relationship of the proposed use to the Comprehensive Plan.

C) A land capability report prepared by a person or firm qualified by training and experience to have expert knowledge of the subject. The report will identify the capability of

the land to withstand disturbance without risk of substantial harmful consequences of floods, sewage, drainage, erosion, sedimentation, or geological or surface slippage.

**4.** Section 4.05 provides:

*Section 4.05 Evaluation*
The staff and the Commission will review the particular facts and circumstances of each proposal submitted to the Commission and will find adequate evidence showing that such a proposal has been addressed [sic] the following:

A) That the proposal is in accordance with the general and specific objectives of the Comprehensive Plan.

B) That the proposal has been designed to be constructed and maintained in harmony with the existing or intended character of the vicinity.

C) That the proposed use will not create a hazard or will be dangerous to persons on or adjacent to the property.

mechanism to attach site-specific development conditions to a specific application.... Section 4.05 must be read with these limitations in mind, applying the provisions that are applicable to each respective type of application listed in section 4.04. We believe we have done so.

This interpretation appears reasonable. Notwithstanding its apparent reasonableness, it does violate the rule that a Board is obligated to follow the provisions contained in its zoning ordinance. In *Lowery v. Board of County Commissioners for Ada County*, 115 Idaho 64, 70, 764 P.2d 431, 437 (Ct.App.1988), we stated:

> Both a conditional use permit and a zoning certificate focus upon a specific parcel of property and, like variances and individual parcel rezones, are governed strictly by existing ordinance standards and requirements. Therefore, when reviewing such decisions, the appellate court's function is to determine whether the government board's findings are supported by substantial evidence and, if so, whether the board's conclusions properly apply the zoning ordinance to the facts as found.

Although the Board admittedly did not follow the strict mandates of section 4.04(A), this error does not require a reversal of its decision.

As the Board points out, I.C. § 67–5215(g) provides that a court may reverse or modify "the decision *if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:....*" (Emphasis added.) There has been no showing that the Taylors' substantial rights have been prejudiced because Merritt did not supply detailed site plans, assuming it did not. Consequently the failure to strictly comply with section 4.04(A) does not warrant a reversal of the Board's decision under I.C. § 67–5215(g)(3).

■ The Taylors also assert that the Board did not comply with section 4.05. The Board's statement quoted above that it need not apply all of the requirements of section 4.05 to all of the applications made under section 4.04 supports the Taylors'

assertion. More specifically, the Board's memorandum decision does not include any finding that the applications for zone change have "been designed to be constructed and maintained in harmony with the existing or intended character of the vicinity." Ordinance 140 § 4.05(B). The record indicates that the zone change to industrial and intended expansion of the mill would conflict with the intended suburban character of the vicinity. The approval of the zone change applications without requisite findings that the zone change would be in harmony with the character of the vicinity clearly prejudices the Taylors who stand to have their use and enjoyment, as well as the value, of their real property adversely affected.

Likewise, the Board did not find that the proposed zone change "will not create a hazard or will be dangerous to persons on or adjacent to the property." Ordinance 140 § 4.05(C). The Board's explicit decision to ignore these two requirements of section 4.05 violates I.C. § 67–5215(g), as well as the rule quoted from *Lowery v. Board of County Commissioners of Ada County, supra.* The facts and circumstances of the case indicate that the Taylors were prejudiced by these failures. Had the Board addressed these two requirements, it may well have concluded that any hazards or disharmony between the land uses outweighed the benefits of the zone change, thus denying the applications.

■ The Taylors also contend that the Board failed to comply with section 16.03 of Ordinance 140. The Taylors assert that the Board should have made findings that the industrial use would have complied with the standards enunciated in section 16.03. As we interpret this section, its provisions do apply specifically to any request for rezoning to an industrial zone.

Some consideration should be given to the factors set out in section 16.03, "Provisions for Commercial and Industrial Uses" of Ordinance No. 140, in determining whether a change of the mill site to industrial will be in accordance with the Plan's

goal to preserve the "integrity of residential areas."

It seems clear from Ordinance No. 140 that the factors of section 16.03 need to be addressed *before* any approval is given for a zone change, otherwise the Administrator of the ordinance would have no opportunity to exercise the authority given to him by paragraph H of this section.

(§ 16.03(H)) **Enforcement Provisions—** The Administrator, prior to giving zoning approval, may require the submission of statements and plans indicating the manner in which dangerous and objectionable elements involved in processing and in equipment operations are to be eliminated or reduced to acceptable limits and tolerances.

Moreover, before approving a change to an industrial district or zone within the meaning of Article 13.00, findings should be made that the present industrial use fully complies with or will be required to fully comply with this Article. We note particularly section 13.01(D) which provides:

The Planning Commission and the Board of County Commissioners *may* add specific conditions to any Industrial District *to require compatibility with surrounding uses and to assure compliance with the intent of this ordinance and the health and safety of the public.* [Emphasis added.]

Presently, the Board's discussion and findings give little recognition to the Plan's intent to "encourage . . . industry and commercial growth, but not at the expense of . . . the integrity of residential areas." The Board's findings do not reflect enough consideration of the county's intended objective "for new development to minimize the adverse impacts on adjacent areas." Rather, the Board avoids the broader discussion by saying that "the problems of interface with adjoining land uses are solvable through the good faith efforts of the parties or court action." We agree with the district court's observations that "[t]he question of the appropriate zone can only be resolved by examining existing and future land uses in the general area without limiting the focus to the mill site." Some

compromises in the goals of the plan will inevitably have to be made; some should be unacceptable to the overall integrity of the plan. Accordingly, before granting any request to rezone the Merritt property, the Board should consider the above provisions of its ordinance and make appropriate findings. For example, the record contains very general findings as to the number of residences now located near the mill which will be impacted by the mill's present and planned operations. Findings should be made as to the area of impact from emissions coming from the mill, including dust, smoke, noise, odors and light onto residential properties. These are in addition to findings which may be required in order for the Board to properly exercise the discretion given to it by sections 13.01(D) and 16.03.

### "SPOT ZONING"

Finally, the Taylors assert that the zone change decision was invalid "spot zoning" by the Board, as the district court concluded. Of course, the Board and Merritt take the opposite side of this issue and ask us to hold that the district court erred in this conclusion. The court's decision relies upon *Dawson Enterprises, Inc. v. Blaine County*, 98 Idaho 506, 567 P.2d 1257 (1977). In *Dawson Enterprises, Inc.*, the Supreme Court addressed the two different meanings of the term "spot zone." 98 Idaho at 514, 567 P.2d at 1265 (citing Anno., Spot Zoning, 51 A.L.R.2d 251 (1957)). The Court stated:

In its broadest, merely 'descriptive' sense, spot zoning is simply the reclassification of one or more tracts or lots for a use prohibited by the original zoning ordinance. As such, a request for a spot zone has no negative connotations.

*Id.* The Court then described the term "spot zone" in its "normative" or "legal" meaning. In this sense of the term, the grant of a variance

which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use per-

mitted in the rest of the district, is invalid if it is not in accordance with the comprehensive zoning plan and is merely for private gain. [Citations omitted.] *Id.* at 515, 567 P.2d at 1266. Because we earlier held that the Board's decision failed to fully comply with the zoning ordinance, and this failure prejudiced the Taylors, we did not decide whether or not the Board's ultimate finding that the zone change was in accordance with the comprehensive plan is supported by substantial evidence. We did conclude that some of the specific findings are supported by substantial evidence, yet we also noted that there were aspects of the comprehensive plan which do not accord with the zone change. Having withheld decision on the issue of whether the zone change is generally in accordance with the comprehensive plan, we cannot rule on the "spot zoning" issue.

Although the Board has apparently made great improvements in the area of making supporting findings on Merritt's 1989 applications, as compared to Merritt's first application for zone change, it failed to make all of the required findings covering the comprehensive plan and Ordinance 140. The Board's statement that zoning ordinances cannot address and resolve all potential disputes between property owners is accurate, especially in light of the Taylors' testimony regarding a boundary dispute at the hearings. However, the Board seemed to address only the general interests of the community and ignored its obligation to address the compatibility of the zone change with adjoining land uses and the character of the vicinity.

In its brief as an intervenor, Merritt raises additional issues: (1) whether the decision of the district court should apply to its improvements made between the time the zone change was enacted and the district court's reversal, i.e., prospectively only; (2) whether a court can declare an ordinance void on other than strictly constitutional grounds; and (3) whether the district court substituted its judgment for that of the Board. Because we vacate and remand the case for further findings, the first issue is premature. The second issue raised by

Merritt is answered by our applicable standard of review set forth above. Merritt's third issue is likewise unnecessary to address because we hold that the Board did not make complete findings.

We hold that the Board failed to comply with the mandates of Ordinance 140 in its evaluation of the zone change applications. The wording of the ordinance does not grant authority to the Board to pick and choose which requirements it will apply. Absent action altering the language of Ordinance 140, sections 4.04 and 4.05, to be consistent with the Board's interpretation, the ordinance must be fully complied with. We must therefore vacate the Board's decision and remand the case to the Board for more complete findings in accordance with its zoning ordinance. Although we do not decide whether the approval of the zone change applications is in accordance with the comprehensive plan, we note that the Board should have likewise made more complete findings regarding the comprehensive plan.

Costs to appellants; no attorney fees awarded on appeal.

WALTERS, C.J., and SILAK, Acting Judge, concur.

### ADDENDUM

The respondents Thomas R. Taylor and Thelma M. Taylor have filed a petition for rehearing contending that this Court erred in awarding costs of the appeal to appellants. We agree, the Court did inadvertently award costs to appellants when it intended to award costs to the Taylors.

NOW, THEREFORE, the petition for rehearing will be denied but the opinion issued July 30, 1993, will be and it is hereby corrected to award costs on appeal to the respondents Taylors.