**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39441**

| | |
|---|---|
| STATE OF IDAHO, | 2013 Unpublished Opinion No. 568 |
| Plaintiff-Respondent-Appellant on Appeal, | Filed: July 8, 2013 |
| | Stephen W. Kenyon, Clerk |
| v. | |
| JOHN HUNTINGTON WILKS, | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendant-Appellant-Respondent on Appeal. | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Thomas Joseph Ryan, District Judge. Hon. A. Lynne Krogh, Magistrate.

District court appellate decision setting aside judgment of conviction in magistrate division, <u>reversed</u>; judgment of conviction for maintaining a nuisance, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for appellant.

Charles D. Coulter, Boise, for respondent.

_____

WALTERS, Judge Pro Tem

This is an appeal by the State from an intermediate appellate decision by the district court that set aside a judgment of conviction entered in the magistrate division for maintaining a nuisance in violation of a city code. We reverse the district court's decision and affirm the judgment of conviction.

**I.**

**FACTS AND PROCEDURE**

John Huntington Wilks was charged with violation of an ordinance of the City of Fruitland that regulates nuisances. Specifically, the city prosecutor alleged that Wilks "knowingly and unlawfully allow[ed] a junk vehicle to remain on his property within the City [a] Public nuisance, which is in violation of Fruitland City Code 8-2B-1, a misdemeanor." Wilks

was also charged with an additional violation for allowing weeds to grow above eight inches high on the same property. After a trial before the court without a jury, a magistrate found Wilks guilty of the vehicle nuisance violation, but not guilty of the charge relating to the growth of weeds. The magistrate rejected Wilks' asserted defense that he had a constitutionally-protected right to maintain inoperable motor vehicles on the property in question, which preceded the annexation of the property into the City and also preceded the adoption of the ordinance Wilks was charged with violating. On appeal to the district court, the district court set aside the judgment of conviction entered by the magistrate, concluding that Wilks' use of the property is constitutionally protected and protected under Idaho law as a preexisting, nonconforming use. The State has appealed from the district court's intermediate appellate decision.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we review that decision directly and examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). When a criminal action has been tried before a court sitting without a jury, appellate review of the sufficiency of the evidence is limited to ascertaining whether there is substantial evidence upon which a court could have found that the prosecution met its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Bettwieser*, 143 Idaho 582, 588, 149 P.3d 857, 863 (Ct. App. 2006); *State v. Smith*, 139 Idaho 295, 298, 77 P.3d 984, 987 (Ct. App. 2003). We are precluded from substituting our judgment for that of the fact finder as to the credibility of witnesses, the weight of evidence, and the reasonable inferences to be drawn from the evidence. *State v. Vandenacre*, 131 Idaho 507, 510, 960 P.2d 190, 193 (Ct. App. 1998); *State v. Hickman*, 119 Idaho 366, 367, 806 P.2d 959, 960 (Ct. App. 1991). We conduct free review of questions of law presented. *Martel v. Bulotti*, 138 Idaho 451, 453, 65 P.3d 192, 194 (2003) (citing *Polk v. Larrabee*, 135 Idaho 303, 308, 17 P.3d 247, 252 (2000)).

The facts presented at trial and supporting the magistrate's determination that Wilks was guilty of violating the junk vehicle nuisance ordinance were largely undisputed. They show that in 1950, Wilks' parents purchased real property in Payette County, recording the deed in 1952.

The property was annexed into the City of Fruitland in 1967 and was zoned for single family residential use. In 1973, the Fruitland City Council adopted the ordinance making it unlawful for any person to maintain a junk motor vehicle on residential property for a period of more than thirty days.[1] Three years later, the City adopted the ordinance making it unlawful to allow weeds to exceed eight inches in height on property within the city limits.

In June 2010, the Fruitland City Police Chief received complaints about the growth of weeds and the storage of junk motor vehicles on the Wilkses' property. After officers visited the property and viewed its condition, Wilks was charged with maintaining junk motor vehicles on residential property and with allowing the growth of weeds in violation of the pertinent sections of the city ordinances regulating such matters. At trial, several neighboring residents testified about the condition of the Wilkses' property, including the accumulation of more and more junk vehicles on the property over a period of several years. City officials testified that there had been junk vehicles on the property for several years and that despite being served with numerous notices informing him of the ordinance violations, Wilks never removed the junk vehicles from the property.

Wilks testified that the residential property was still owned by his parents, at least by his mother since his father had passed away in 2009, and that he had no present interest in the property, but that he was the sole heir to his parents' property because his only sister had also recently passed away. He testified that both he and his mother presently live in Ontario, Oregon, and not on the Fruitland property. The domestic water service to the property has been shut off. He testified that his father began collecting vehicles and storing them on the property in 1950. Occasionally, his father would sell one of the vehicles, but some of them had been on the property for up to fifty years. Wilks further testified that he owned most of the vehicles on the

---

[1] Fruitland City Code (FCC) § 8-2B-2(B) provides, "It shall be unlawful for any person to maintain a junk motor vehicle, vehicles, or parts thereof on residential property or business property for a period of more than thirty (30) days." There are exceptions to the prohibition against maintaining junk motor vehicles on residential property, including where the vehicle is "completely enclosed within a building in a lawful manner where it is not visible from the street or other public or private property" (FCC § 8-2B-3(A)); where the vehicle is stored or parked on private property in connection with a business of a licensed dismantler, vehicle dealer or junk dealer, or where the vehicle's storage is necessary to the operation of a lawfully conducted business or commercial enterprise (FCC § 8-2B-3(B)); and for regularly used recreational vehicles and for vehicles owned by active duty military personnel stationed outside the state (FCC § 8-2B-3(C), (D)). It is undisputed that none of these exceptions applied in Wilks' case.

property and that he had started storing vehicles on the property in 1962. He admitted that neither he nor his father was duly licensed to be a collector or dismantler of vehicles or to operate a junkyard business on the property.

At the conclusion of the evidence, Wilks moved to dismiss the junk motor vehicle charge, arguing that the storage of junk vehicles on his parents' property constituted a preexisting, nonconforming use that is constitutionally protected. The magistrate denied Wilks' motion and found that Wilks was guilty of maintaining junk vehicles on residential property in violation of the city ordinance.[2] The court said:

> With respect to the argument about constitutionality, Mr. Wilks is not being prohibited from owning junk vehicles. He is not prohibited from owning as many junk vehicles as he wants to own. The county and the city can adopt reasonable ordinances to promote the safety and welfare of the public, and that includes saying that if you're going to have junk vehicles you either have to keep them behind a fence or stored in an appropriate facility so the place doesn't look like a junkyard that devalues other properties in the neighborhood.
> So the [ordinance] is not unconstitutional, and Mr. Wilks is in violation of it by having junk vehicles that belong to him that are on the property that are not licensed, not registered, not operable, and not behind a fence or in a building.

The magistrate entered a judgment of conviction, fined Wilks $300, and sentenced Wilks to serve thirty days in jail. The court set a review date for six weeks in the future and withheld imposition of the jail sentence pending the review date to give Wilks time to present proof that each of his vehicles either was operating and registered, or stored in an outbuilding, or removed from the property, in which case the jail term would be suspended.

On Wilks' appeal to the district court, the district court held that Wilks' use of the real property was the same use to which the property had been put before and after the adoption of the zoning ordinance by the City of Fruitland. Accordingly, the district court ruled that "the current use of the Wilks' property is a constitutionally protected pre-existing non-conforming use and as such is protected under Idaho law." The State contends that the district court erred in its conclusion because Wilks lacked standing to assert a claim of a preexisting, nonconforming use that is constitutionally protected (commonly referred to as a "grandfather" right) inasmuch as Wilks was not the owner of the residential property where the junk motor vehicles were located.

---

[2] The magistrate found Wilks not guilty of violating the city weed ordinance because there was no evidence that Wilks owned the real property or otherwise was responsible for maintaining the land.

4

Although the State had raised the standing issue on the appeal to the district court, the district court did not explicitly address that issue in its appellate decision, inferentially determining that Wilks did have standing to claim the grandfather right.

We conclude that the State is correct in its assertion that Wilks' storage of his inoperable motor vehicles on his parents' property is not protected as a preexisting, nonconforming use because Wilks is not the owner of the real property. It is well recognized that a nonconforming use is a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions. *Kootenai Cnty. v. Harriman-Sayler*, 154 Idaho 13, 18, 293 P.3d 637, 642 (2012); *Baxter v. City of Preston*, 115 Idaho 607, 608-09, 768 P.2d 1340, 1341-42 (1989). Furthermore, it is a property-right protection based upon the state and federal due process clauses. *Harriman-Sayler*, 154 Idaho at 18, 293 P.3d at 642; *Baxter*, 115 Idaho at 608-09, 768 P.2d at 1341-42; *Boise City v. Blaser*, 98 Idaho 789, 572 P.2d 892 (1977); *O'Connor v. City of Moscow*, 69 Idaho 37, 202 P.2d 401 (1949). Often referred to as a "grandfather right," a nonconforming use simply protects the owner from abrupt termination of what had been a lawful condition or activity on the property; the protection does not extend beyond this purpose. *Harriman-Sayler*, 154 Idaho at 18, 293 P.3d at 642; *Baxter*, 115 Idaho at 608-09, 768 P.2d at 1341-42.

Given that grandfather rights are *property rights*, obviously a claimant will be unable to establish a nonconforming use where the claimant has no proprietary interest in the land. *See* Eric M. Larsson, *Cause of Action to Obtain Zoning Exemption Based Upon Nonconforming Use*, § 16, *in* 36 CAUSES OF ACTION 583 (2d ed. 2013). The Court of Appeals of Michigan discussed this principle in *Gerrish Twp. v. Esber*, 506 N.W.2d 588 (Mich. Ct. App. 1993), where the township brought suit seeking the removal of two signs advertising the defendants' grocery store, which violated a zoning ordinance passed after their placement. The signs were located on a piece of land owned by the state approximately a mile from the store. The defendants argued placement of the signs was a valid nonconforming use; however, the court pointed out that the defendants overlooked the fact that the signs were not on their property. *Id*. Noting that permitting the continuation of a nonconforming use is designed to avoid the imposition of hardship upon the *owner* of property, the court rejected the defendants' assertion of a valid nonconforming use because the defendant had no property right to be protected in this instance.

5

*Id.* *Accord Young v. Planning Comm'n of Cnty. of Kaua'i*, 974 P.2d 40, 50 (Haw. 1999) (holding that because "the zoning law concept of 'non-conforming use' protects *landowners* who have vested rights to use their land in a fashion later prohibited by restrictive zoning regulations," the plaintiff, who had no proprietary interest in the land under which he was operating his tour boat or any vested interest in use of the bodies of water, could not claim a valid nonconforming use); *The Lamar Co.*, *LLC v. City of Fremont*, 771 N.W.2d 894, 903 (Neb. 2009) (holding that because the right to maintain a legal nonconforming use "runs with the land," where claimant's leasehold had been terminated on the land, the claimant no longer had ownership interests in the nonconforming use rights and did not have standing to challenge the relevant ordinance); *Haher's Sodus Point Bait Shop*, *Inc. v. Wigle*, 139 A.D.2d 950, 950 (N.Y. App. Div. 1988) (holding claimant had no right to use of land later prohibited by restrictive zoning regulations where it did not own the land upon which the contested use existed).

Although generally referring to the "owner" of land on which the nonconforming use runs, case law is clear that the benefit of a nonconforming use may inure to a subsequent transferee who obtains a proprietary interest in the land as a result of a transfer of title, such as by mortgage foreclosure or inheritance. *See Budget Inn of Daphne*, *Inc. v. City of Daphne*, 789 So. 2d 154, 159 (Ala. 2000) (noting that the right to a nonconforming use is one of the "'bundle of rights' which together constitute the attributes of ownership of the land" extending to a new owner of the property) (citing 4 RATHKOPF'S THE LAW OF ZONING AND PLANNING, § 51.03 (1994)).

While Wilks may have had permission from his mother to store his motor vehicles on her property, this appears to have been an inchoate interest terminable at will by Mrs. Wilks and did not create an enforceable proprietary interest or attribute of ownership that Wilks could claim was attached to the property as a right devolving to him.

Wilks did not establish that he had any proprietary interest through ownership or by leasehold in the Fruitland property. He therefore lacked standing to assert a right to maintain a use of his parents' property not in conformity with the Fruitland City ordinances.

### III.
### CONCLUSION

The intermediate appellate decision of the district court is reversed and the judgment of conviction entered in the magistrate division, for maintaining junk vehicles in violation of the Fruitland City ordinance, is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**