874 P.2d 587

George CUNNINGHAM, Maurice Graves, Harry Merrick and John and Jane Does I through 50, Petitioners–Appellants on Appeal,

v.

CITY OF TWIN FALLS, a municipal corporation of the State of Idaho, Respondent–Respondent on Appeal,

and

Reed Goold, an individual Intervenor Respondent–Respondent on Appeal.

No. 20080.

Court of Appeals of Idaho.

March 31, 1994.

---

James T. Jones, Boise, for appellants.

Benoit, Alexander, Sinclair, Harwood &
High, Twin Falls, for respondent, City of
Twin Falls.  Jacqueline S. Wakefield, ar-
gued.

Smith & Beeks, Twin Falls, for respondent, Reed Goold. Leon E. Smith, argued.

SWANSTROM, Judge, Pro Tem.

The Twin Falls City Council (City Council) affirmed the decision of the Twin Falls City Zoning Administrator (Administrator) to allow a community work center to be operated by the Idaho Department of Corrections (Department) in an area zoned "M1, Light Manufacturing District." The appellants (Cunningham) are people who live and own property near the site of the Center and oppose its operation. Cunningham appealed the City Council's decision to allow the proposed use to the Area of Impact Board of Appeals (Board). The Board made findings of fact and conclusions of law to support its determination that the use was authorized by the Development Regulations of Twin Falls (City Code). After an interim appeal to the district court, which affirmed in part and reversed in part, Cunningham further appeals. For reasons which follow, we affirm the district court's appellate decision.

The broad issue in this appeal concerns whether the existence and operation of the Center is an allowed use in a zoning district classified M1, Light Manufacturing. A sub-issue is whether the Center is an allowed "governmental protective facility." Cunningham also challenges the Board's finding that the Center is not a prohibited residential use. Finally, Cunningham raises the question of whether the zoning and building permits issued for the Center are void in light of the decision of the district court. The City facially raises additional issues on appeal, however, other than its request for attorney fees, they are more accurately characterized as argument. Reed Goold, who owns the property where the Center has now been built, raises the question of whether Cunningham has failed to exhaust all of the applicable administrative remedies.

## FACTS AND PROCEDURE

The site for the Center is not within the Twin Falls city limits, but is within the area of impact in Twin Falls County. In May of 1991, Goold talked to the Administrator about the feasibility of locating a community work center on his property. Goold informed the Administrator of his plans to construct the Center and lease it to the Department. The proposed Center would house, feed and train approximately fifty minimum or community custody level inmates. The Administrator orally advised Goold that the Center was "an allowed use either as a governmental facility, or a governmental protective facility."

Cunningham sought review of the Administrator's determination before the City Council. The Council considered the matter in a public hearing October 7, 1991, after which it issued a written opinion affirming in part the Administrator's oral rulings. The Council determined that the facility would be allowed as a "governmental protective facility." The Council found that "use" as defined in the City Code included leased facilities. The Council further found that the Center qualified as a "protective" facility because the inmates to be housed there would be "guarded, controlled and monitored." The Council also found that operation of the Center in the M1 District was in harmony with the Twin Falls Comprehensive Plan.

Cunningham brought the dispute regarding the proposed Center to the Board which affirmed the City Council's decision.[1] The Board held a public hearing on November 26, 1991. On December 31, 1991, the Board issued a written decision containing its findings of fact and conclusions of law, and it adopted and incorporated into its decision the Council's findings of fact and conclusions of law, reaching the same conclusion: that the Center was a governmental protective facility, which is an allowed use in an M1 District.

Cunningham petitioned the district court for review. I.C. § 67–5215. The court issued its decision concluding, as a matter of law, that the undefined term "governmental protective facility" was broad enough to in-

---

1. The Board's findings and conclusions were not initially made a part of our record on appeal. On March 2, 1993, Cunningham moved to aug- ment the findings of the Board to our record. In a separate order, this Court has granted the motion.

clude a "correctional facility." The court also affirmed the Board's finding that a governmental protective facility was not a prohibited residential use. Finally the court noted that although the term, "governmental protective facilities," was not defined, the City Code set forth a definition for "governmental facilities." Section 10-2-1 of the City Code provided that "governmental facilities" were "[f]acilities owned and operated by a governmental agency for the benefit of the general public." The court applied the same ownership requirement to the undefined term "governmental protective facilities." The court held that the Board erred as a matter of law by classifying "the Center, which is not owned by a government agency, as ... a governmental protective facility."

Our standard of review is set forth in *Hardy v. Higginson,* 123 Idaho 485, 488, 849 P.2d 946, 949 (1993):

> In an appeal from an agency decision, we review the agency's decision independently of the district court's decision and our review is limited to the record. Under I.C. § 67-5215(g)[2], this court can reverse or modify an agency decision only in limited circumstances such as when the agency's decision is affected by error of law, is clearly erroneous in view of the whole record, or is found to be arbitrary or capricious. In addition, if the record is insufficient to support the agency's decisions, we can reverse the decision or remand the case for further proceedings. (Citations omitted.)

## I

We turn to Cunningham's general assertion that the Center is not permitted in the M1 District. Cunningham correctly points out that "community work center" is not one of the specifically enumerated uses contained in § 10-4-10.2 of the City Code which provides a list of "permitted" and "special" uses allowed in the M1 District. Section 10-4-10.2(C) prohibits any uses in the M1 District "not specified ... unless administrative determination in accordance with § 10-17-1(F) is made that the distinction between them is of little consequence." Cunningham also correctly asserts that prior to the appeal to the district court, the Administrator did not comply with § 10-17-1(F) when he determined that the Center was a use similar to a specified use. The Administrator only made oral statements to Goold, that the Center was an allowed use in the M1 District within either of the permitted uses for "governmental facilities" or "governmental protective facilities." The City and the Board in turn later found that the Center was an allowed use because it was a governmental protective facility.

The City initially asserts that we should dismiss this appeal because we do not have an adequate appellate record due to the absence of the Board's written decision. As we noted in footnote 1, *supra,* the augmented record has resolved this concern.

## A.

In order to resolve the first issue, we must determine whether the Center falls within the scope of a "governmental protective facility" which is a permitted use under § 10-4-10.2(A)(13)(1.). The term, however, is not defined in the City Code. We apply the same principles in construing municipal ordinances as we do in the construction of statutes. *State v. Roll,* 118 Idaho 936, 939 n. 2, 801 P.2d 1287, 1290 n. 2 (Ct.App.1990)

**2.** Idaho Code § 67-5215(g) provides:

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;
(3) made upon unlawful procedure;
(4) affected by other error of law;
(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(citing *Jackman v. Hamersley,* 72 Idaho 301, 305, 240 P.2d 829, 832 (1952)).

The parties have focused their arguments regarding this issue on the nature of the Center's use and the modifying term "protective." Cunningham contends that the Center is more accurately described as a "correctional facility." As stated above, if a use is not a specifically "permitted use" or a "special use," it is prohibited under the City Code unless the Administrator determines that a use is allowed under certain guidelines. City Code § 10–4–10.2(C). Cunningham contends that because "correctional facility" is not specifically listed as a permitted use or a special use, the Center is an unauthorized use. Cunningham further contends that the term "governmental protective facilities" includes only uses which protect the general public, such as fire and police stations.

The City and Goold respond that the Center provides a regimented environment where neither the work center inmates nor members of the general public are free to come and go at will. As stated above, the Board adopted the City Council's findings and decision. The City Council, and thus the Board, found that the Center "is a protective facility because the facilities are secure. The inmates are guarded, controlled and monitored. They are not free to leave without authorization, nor are visitors free to come and go." In the absence of a specific definition for "protective," the finding that the Center is protective in nature, after the City Council and Board heard testimony on the nature of the use, will not be changed on appeal.

## B.

■ Although we affirm the Board's finding that the Center was "protective" in nature, that is not the only inquiry. The City Council and Board also found that the Center was an allowed use because "use" is defined in the City Code to include leased facilities. City Code § 10–2–1. However, the district court reached a different conclusion.

The district court noted that notwithstanding the absence of a definition for "governmental protective facilities," the term "governmental facilities" was defined in § 10–2–1. The court ruled that the definition for the latter term should apply to the former. Although the parties have not cited a case with facts similar to those before us, applying the explicit definition of a two-word term to another term in the same statute which consists of the same two words plus a third word appears reasonable where a contrary intent is not evident. *Cf. Roe v. Hopper,* 90 Idaho 22, 408 P.2d 161 (1965) (legislative definitions of statutory terms control and dictate the meaning of those terms as used in the statute). Section 10–2–1 defined "governmental facilities" as "facilities *owned* and operated by a governmental agency for the benefit of the general public." (Emphasis added.) The court concluded that because the Department had merely a leasehold interest in the Center, and did not own a fee interest, the Center did not qualify as a governmental protective facility. The district court's application of the ownership requirement contained in the definition of "governmental facilities" to the undefined term "governmental protective facilities" is persuasive. The court went on to note, however, that "[i]f, in the City Council's opinion, the ownership language serves no purpose, then it is up to the Council to legislate the language out of the ordinance."

■ The City Council adopted an ordinance on June 15, 1992, abrogating the ownership requirement from the definition of "governmental facilities." As amended, § 10–2–1 defines "governmental facilities" as "[f]acilities operated or occupied by a governmental agency for the benefit of the general population." If this amendment applies retroactively, then the Center qualifies as a governmental protective facility and thus is an allowed use. In his reply brief, Cunningham cites *South Fork Coalition v. Board of Comm'rs,* 117 Idaho 857, 792 P.2d 882 (1990), and the cases cited therein indicating that Idaho has followed the minority view by adopting the rule that "an applicant's rights are determined by the ordinance in existence at the time of filing an application for the permit." *South Fork Coalition,* 117 Idaho at 861, 792 P.2d at 886. The result is that post-permit filing changes or amendments to a

zoning ordinance will not be applied retroactively.

We must determine whether the rule set forth in *South Fork Coalition* and the earlier cases applies to the instant case. Briefly, the facts of *South Fork Coalition* are as follows. Hays & Sons, Inc., owned land in Bonneville County and proposed to build a planned unit development (PUD) on land it owned in a grazing zone. At the time the preliminary approval application was made, the proposed PUD did not violate the zoning ordinance. Afterward, the local zoning authority adopted an amending ordinance which limited the allowable density in the particular zone Hays & Sons, Inc., proposed to develop. If applied retroactively, the amendment would have prohibited final approval of the PUD. However, the board of commissioners and the district court applied the zoning ordinance in effect at the time the preliminary approval was granted; the Supreme Court affirmed.[3] Retroactive application of the zoning change made in *South Fork Coalition* would have adversely affected the applicant's rights. The same is true for the other cases cited therein and discussed briefly in footnote 3, *supra.* However, retroactive application of the ordinance which amended the definition of governmental facilities by deleting the ownership requirement would have beneficially affected the applicant's rights, yet it would have adversely impacted Cunningham. Although no other reported Idaho cases have presented a situation where retroactive application of a zoning amendment would beneficially impact an applicant's rights, we see no rationale in the *South Fork Coalition* line of

cases for making a distinction on the basis of whether the applicant or the applicant's adversaries would be adversely affected. Likewise, although the zoning ordinance in the instant case merely changed a definition, and was not a creation/deletion of a zone designation or the promulgation of a new comprehensive plan, the rule announced in the cited cases does not rely on the significance of the change.

■ The *South Fork Coalition* rule is applicable where a building permit has been applied for prior to the amendment or change in the ordinance. *Compare Foster v. City of St. Anthony*, 122 Idaho 883, 887, 841 P.2d 413, 417 (1992) (distinguishing *South Fork Coalition* because in *Foster*, the building permit was applied for after the new zoning ordinance was in effect). It is undisputed here that the building permit was issued to Goold prior to the adoption and effectiveness of the ordinance eliminating the ownership requirement for "all governmental facilities. We conclude that the rule followed in *South Fork Coalition* applies to this case.

### C.

■ Cunningham next contends that the Center is an impermissible use in the M1 District because it is a residential use. A residential use is defined by § 10-2-1 of the City Code as "[a]ny use designed or intended to meet the cooking, sleeping and sanitary needs of one or more individuals." Section 10-4-10.1 states that the purpose of the M1 district is to allow certain commercial and

3. A brief description of the cases cited in *South Fork Coalition* follows. The retroactivity issue in *Cooper v. Board of County Comm'rs. of Ada County*, 101 Idaho 407, 614 P.2d 947 (1980), surfaced in a motion for rehearing where the parties questioned which Comprehensive Plan would govern on remand, the one in effect at the time of the initial application, or a more recent version. The Supreme Court held that the earlier Comprehensive Plan should apply.

The facts of *Ready–To–Pour, Inc. v. McCoy*, 95 Idaho 510, 511 P.2d 792 (1973), are that in 1969, a company purchased three lots in an area where, approximately four years earlier, the City of Ketchum had adopted an ordinance establishing an industrial district. The company unsuccessfully attempted to obtain a permit to build a concrete batch plant. Thereafter the City

adopted an ordinance which eliminated the industrial district. The Supreme Court affirmed the district court's decision, holding that the new ordinance would not be applied retroactively.

The case in which the rule was initially announced is *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209 (1968). In that case, the City of Idaho Falls annexed land which had been part of the county. When the City annexed the land, the City did not zone the property. The Supreme Court held that the county zoning designation did not apply and that the annexed land was not zoned. The Supreme Court reversed the district court and held that the subsequent zoning ordinance would not apply to the preceding application for a building permit to construct a service station.

industrial "uses without residential encroachment." However, Cunningham concedes that specific residential uses are allowed, namely, pre-existing uses and "household units" in a building containing an allowed use, where the household unit is occupied by an owner or employee of the allowed use in the same building. City Code § 10–4–10.2(A)(1)(a), (b). Neither the City nor Goold contends that the Center qualifies under one of the two residential use exceptions. The parties agree that the intent to keep residential uses out of the M1 District is manifest in the City Code.

Cunningham cites the City Council's statement of the Center's purpose, namely, "to house, feed and train fifty-six minimum or community custody level inmates," as support for his contention that the Center is a residential use. Because the Center is not one of the specifically allowed residential uses, Cunningham asserts that the Center is a disallowed use.

The City and Goold rely on the reasoning set forth by the district court in holding that the Center was not a residential use. Because the Center would provide food and shelter for the inmates, the court noted that it would have residential attributes. However, the court also noted that governmental protective facilities were service uses specifically permitted in the M1 District by § 10–4–10.2(A)(13)(1). The court also affirmed the Board's adopted finding initially made by the City Council that the Center was protective in nature. The court concluded that an issue of interpretation was created where such uses overlapped.

As the district court stated, the ordinance must be construed as a whole. See Sherwood v. Carter, 119 Idaho 246, 254, 805 P.2d 452, 460 (1991). In affirming the Board's finding that the Center was not a residential use, the court stated that the primary purpose of the Center is to protect the inmates and general public from one another, and that the need to house and feed inmates is incidental. We agree. The Board's finding that the Center is not a residential use, but rather a protective facility, is a reasonable interpretation of the City Code.

II

In its decision on rehearing, the district court denied both motions to reconsider and issued a written opinion to clarify its previous decision. The court emphasized that although it agreed with the specific findings that the Center's proposed use was protective and not residential, it reversed the Board's general finding that the Center was an allowed use as a governmental facility, because it was not owned by a governmental agency. In light of the court's reversal, Cunningham raises an issue with respect to the validity of the zoning and building permits, which are not a part of our record on appeal.

The City Code provides specific agency procedures for the revocation of permits. See § 10–13–2.3. Cunningham has not shown, and the record does not reveal, that he has taken any administrative steps to have the permits revoked. In his petition for review, Cunningham did ask the district court not only to reverse the actions of the Administrator, the City Council and the Board but also asked that "all permits issued by the City with respect to the Center be ... [revoked] and cancelled." The district court did not expressly address this latter request. For reasons which follow, we likewise will not address the issue of the validity of the permits.

After hearing the motions for reconsideration, the district court filed its final decision on June 10, 1992. As far as we know from the record before us this ended the district court's involvement in this controversy. Nevertheless, after this appeal was filed in the Supreme Court, but before the case was assigned to the Court of Appeals, the parties to this appeal, by stipulation, sought to augment the appellate record to include documents showing actions taken by the parties subsequent to the district court decision. Based on the stipulation, the Supreme Court augmented the record with the documents as exhibits shown below, and the parties have discussed these documents and events in their briefs and oral argument. It is evident that all of these documents were created after June 10, 1992, and, therefore, none of

the documents was before the district court as part of the record below.

As noted earlier, on June 15, 1992, the City amended § 10–2–1 of the Code to remove the requirement of ownership from the definition of "Governmental Facilities." (Exhibit A) On June 29, Goold filed a request with the City, under §§ 10–4–10.2(C) and 10–17–1(F), asking the zoning Administrator for his determination under § 10–17–1(F) as to whether there was any significant distinction between a work center "owned" by a governmental agency and a similar facility which was leased by a governmental agency. (Exhibit B) On July 29, 1992, the Administrator responded in writing (Exhibit C) that, in his view, the distinction between a governmental protection facility owned by a governmental agency and one which was only leased by a governmental agency was of "little or no consequence." § 10–4–10.2(C). Cunningham appealed this determination to the City Council which affirmed the Administrator's finding. (Exhibits D, E and F) Goold contends, and the contention is not disputed, that no further appeal was taken to the Area Impact Board of Appeals or to the district court. As a result, Goold contends that the validity of the zoning and building permits issued to Goold is established by the record of events subsequent to the district court's appellate decision. He argues that Cunningham did not follow procedures specified in the City Code to have the permits revoked, and that Cunningham has not exhausted all necessary administrative remedies before asking this Court to rule that the permits are invalid.

■ This course of events has created an interesting procedural history. Although neither the district court's first decision nor the decision on rehearing contained an explicit remand order, Goold sought, the Administrator made, and the City Council affirmed, an additional finding that "the ownership requirement is of little consequence," because the Center's use is the same. It is apparent that the Administrator made this additional finding at Goold's request as a separate basis to support his earlier determination that the Center was a governmental protective facility. We conclude that these findings are not before us to review as they were never appealed either to the Board or to the district court. See I.C. § 67–5215(a) ("A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case of any agency ... is entitled to judicial review under this act.").

■ In section I B of this opinion, *supra*, we affirmed the district court's application of the ownership requirement from the definition of "governmental facilities" to "governmental protective facilities." We have also refused to retroactively apply the amendment deleting that requirement from the definition. However, these rulings do not preclude the Center from being an allowed use within the M1 District. The district court's opinion did not preclude additional administrative findings by simply reversing on one issue when that reversal leads to yet another avenue which could support the Board's ultimate decision. See *Lowery v. Board of County Comm'rs for Ada County,* 115 Idaho 64, 67, 764 P.2d 431, 434 (Ct.App.1988) (held that district court's role was to determine the propriety of the county's motion, but not to displace the county by "denying" the certificate and permit directly.).

Notwithstanding the temptation to affirm the Board's decision outright on the basis of the Administrator's July 29 findings, we are constrained to limit our affirmance. Although the district court did not preclude further findings, neither did the court remand for additional findings by the agency or its Administrator. We will not rule on the validity of those findings because Cunningham did not exhaust his administrative remedies so as to preserve the issue for this appeal.

In summary, we affirm the district court's decision upholding the findings that the proposed use of the Center was primarily "protective" rather than "residential." We also uphold the district court's decision to apply the ownership requirement to the undefined allowed use, "governmental protective facilities," which ruling effectively reversed the Board's conclusion.

784

Although the City Council deleted the ownership requirement by amendment, we decline to apply that ordinance retroactively, following *South Fork Coalition, supra.* However, we recognize that the district court's decision did not preclude the City from making additional findings in accordance with § 10–17–1(F) so as to qualify the Center as a governmental protective facility. This would involve no retroactive amendment of the ordinances, because §§ 10–4–10.2 and 10–17–1(F) have always existed with provisions for allowing similar uses to those specifically enumerated in § 10–4–10.2.

We award no attorney fees on appeal, but award costs to the City and to Goold. *See* I.A.R. 40.

WALTERS, C.J., and SCHROEDER, J. Pro Tem., concur.