46 P.3d 9

**FRIENDS OF FARM TO MARKET, an Idaho Unincorporated association, Appellant–Appellant on Appeal,**

v.

**VALLEY COUNTY, Idaho, Board of Commissioners, in their official capacities, Respondents–Respondents on Appeal,**

and

**D. John Carey, Intervenor–Respondent on Appeal.**

No. 27106.

Supreme Court of Idaho,
Boise, January 2002 Term.

March 26, 2002.

Rehearing Denied May 13, 2002.

Sheroke & McGregor, Coeur d'Alene, for appellant. Marc McGregor argued.

Richard T. Roats, Valley County Prosecutor, Cascade, for respondents.

Millemann, Pittenger McMahan & Pemberton LLP, McCall, for Intervenor D. John Carey. Steven J. Millemann argued.

TROUT, Chief Justice.

This is an appeal from an administrative proceeding that was affirmed on review by the district court concerning the development of real property in Valley County, Idaho. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Developer Jug Mountain Ranch, Inc., whose sole shareholder is Intervenor D. John Carey (Carey) submitted an application labeled[1] as a conditional use permit (CUP) dated September 30, 1997 to the Valley County planning department. The application sought approval of a 1,335–acre develop-

1. The application was probably incorrectly labeled, and it was really an application for con- cept approval.

ment plan that included 325 residential units, an eighteen-hole golf course with a clubhouse, 5,000 square feet of restaurant space and 10,000 square feet for shops. The application called for the project to be developed in five phases.

Phase 1 of the project would develop 51 acres of residential and 142 acres of recreation/open space; Phase 2, 42 acres of residential and 159 acres of recreation/open space; Phase 3, 11 acres of residential, 80 acres of mixed use/mixed residential, and 51 acres of recreation/open space; Phase 4, 51 of acres residential and 71 acres of recreation/open space; and Phase 5, 91 acres of residential and 602 acres of recreation/open space. A total of 1,010 acres of the project was platted as contiguous recreational/open space areas.

The Valley County land use ordinance (Ordinance) requires compatibility ratings be used when evaluating whether to approve such an application. The compatibility ratings are the first of five questions to be answered in evaluating the approval of a development, and the compatibility ratings are based on consideration of nine questions specifically designed to determine compatibility of the development with other area properties. On October 27, 1997, the Board of Commissioners (Board) passed a resolution stating that questions 6, 8, and 9 of the compatibility rating would be processed by the Board rather than the Planning and Zoning Commission (Commission).

The application was noticed for hearing by the Commission as a CUP on February 12, 1998. Public comment was heard on that day as well as on March 12, 1998, and the application was tabled until April 9, 1998. The Commission continued evaluation of the compatibility questions that it had been directed to decide on April 22, 1998.

Although three of the four members of the Commission members rated the application positively, the fourth member rated the application in such a negative manner that the overall rating was negative. Thus, the Commission did not continue with questions 2–5, but rather passed the results of the Commission's findings to the Board. On July 13, 1998, the Board held a public hearing on the matter, and its deliberations continued into the following day, July 14, 1998. Several memoranda and studies were submitted at this meeting. At the conclusion of the meetings, the Board arrived at its compatibility rating for Questions 6, 8, and 9, resulting in a net rating of +8. This rating, when combined with the Commission's net rating, resulted in an overall positive number, so the Board remanded the application back to the Commission to determine questions 2–5 under the Ordinance.

On September 3, 1998, a joint hearing was held by the Commission and the Board, primarily concerning the compatibility rating of Questions 6, 8, and 9, and the Board again voted at the conclusion of the meeting that the compatibility on those questions was a +8. On September 4, 1998, a "Preliminary Development Agreement" was unanimously approved and signed by the Board.

On September 14, 1998, Friends of Farm to Market (Friends) filed an administrative appeal of the approval with the Board. The Board held a hearing on the matter on November 9, 1998, and on November 10, 1998, the Board unanimously voted to deny the administrative appeal. The Commission and the Board adopted "Findings of Fact" and "Conclusions of Law" on November 8, 1998, and November 11, 1998, respectively.

Friends filed for judicial review of the Board's denial of its appeal with the district court, which the district court dismissed "for lack of a judicially reviewable final agency action or order." Friends appealed the district court's order to this Court and this Court then dismissed the appeal based upon lack of finality.

On May 24, 1999 Carey filed two Applications for Conditional Use Permits (CUP) Nos. 99–11 (relating to central sewage facility) and 99–12 (relating to preliminary plat approval) with the County. The Commission held hearings regarding approval of CUP No. 99–11 and CUP No. 99–12 on July 8, 1999, and July 13, 1999, respectively. Several agencies and entities including the Central Health District, the Valley Soil and Water Conservation District, the Idaho Department of Fish and Game, and the Army Corp of

Engineers commented on the CUPs. Following the hearings and written comments, the Commission voted to recommend approval of both CUP Nos. 99–11 and 99–12 to the Board, finding a compatibility rating of +8 for CUP 99–11 and +10 for 99–12.

Friends filed an administrative appeal with the Board, appealing the Commission's approval of CUP No. 99–11 and CUP No. 99–12. The Board heard arguments on the matter and voted to deny the appeal on September 7, 1999, and thereafter issued "Findings of Fact and Conclusions of Law" denying each appeal. CUP Nos. 99–11 and 99–12 were issued on September 24, 1999, and on October 8, 1999, a "Petition for Review and Notice of Appeal" was filed in the district court challenging these permits and the procedures used in approving them.

The district judge affirmed the Board and denied the Petition in an Order dated October 25, 2000. The district judge wrote:

> Friends has failed to demonstrate that the decisions of the County Board violated constitutional or statutory provisions or that the decisions were made in excess of its authority or that the decisions were made upon unlawful procedure or that the decisions were not supported by substantial evidence in the record as a whole or that the decisions were arbitrary, capricious, or an abuse of discretion.

Friends then appealed to this Court.

## II. STANDARD OF REVIEW

"The Idaho Administrative Procedures Act [ (I.A.P.A.) ] governs the review of local zoning decisions." *Price v. Payette County Bd. of County Com'rs,* 131 Idaho 426, 429, 958 P.2d 583, 586 (1998) (citing *Comer v. County of Twin Falls,* 130 Idaho 433, 437, 942 P.2d 557, 561 (1997)). In an appeal from the decision of a district court acting in its appellate capacity under the I.A.P.A., this Court reviews the agency record independently of the district court's decision. *Id.* (citations omitted); *Howard v. Canyon County Bd. of Comm'rs,* 128 Idaho 479, 480, 915 P.2d 709, 710 (1996) (citation omitted). Interpretation of an ordinance, like construction of a statute, is an issue of law and therefore an appellate court exercises free review of the district court's decision. *See State v. Nelson,* 119 Idaho 444, 446, 807 P.2d 1282, 1284 (Ct.App.1991).

This Court, however, does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5279(1). Rather, this Court defers to the agency's findings of fact unless they are clearly erroneous. *Price,* 131 Idaho at 429, 958 P.2d at 586 (citing *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998)) (citing *South Fork Coalition v. Board of Comm'rs of Bonneville County,* 117 Idaho 857, 860, 792 P.2d 882, 885 (1990)). "In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *Id.*

The Board's zoning decision may only be overturned where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. *Id.* (citing I.C. § 67–5279(3)). The party attacking the Board's decision must first show that the Board erred in a manner specified in Idaho Code § 67–5279(3), and then it must show that its substantial right has been prejudiced. *Id.* (citing *Angstman v. City of Boise,* 128 Idaho 575, 578, 917 P.2d 409, 412 (Ct.App. 1996)).

## III. ANALYSIS

Friends asserts that Valley County did not follow the procedural and substantive requirements of the Ordinance, that the granting of the permits was arbitrary and capricious, and that its findings of fact are not supported by substantial and competent evidence.

### A. Simultaneous Submission

Friends argues that the Ordinance mandates that CUP Nos. 99–11 and 99–12 should have been submitted at the same time as the

PUD in one complete application. The district judge, noting that the Ordinance only requires that the PUD " 'be developed under a single comprehensive plan of development,' " held that "there is nothing in [the Ordinance] that prevented separate consideration of the application for concept development of JPUD and the application for conditional use permit [No. 99–11 and No. 99–12] for a particular phase or stage of JPUD." Valley County also notes, as did the district judge, that if the Ordinance were read to require the CUP applications be submitted at the time of the PUD approval, this would effectively eliminate Appendix C of the Ordinance, which is labeled "Planned Unit Development Requirements."

"We apply the same principles in construing municipal ordinances as we do in the construction of statutes." *Cunningham v. City of Twin Falls*, 125 Idaho 776, 779, 874 P.2d 587, 590 (Ct.App.1994) (citing *State v. Roll*, 118 Idaho 936, 939 n. 2, 801 P.2d 1287, 1290 n. 2 (Ct.App.1990)). The objective in interpreting a statute or ordinance is to derive the intent of the legislative body that adopted the act. *Ada County v. Gibson*, 126 Idaho 854, 856, 893 P.2d 801, 803 (Ct.App. 1995) (citing *Ada County Assessor v. Roman Catholic Diocese of Boise*, 123 Idaho 425, 428, 849 P.2d 98, 101 (1993); *Cox v. Department of Insurance*, 121 Idaho 143, 146, 823 P.2d 177, 180 (Ct.App.1991)). "Any such analysis begins with the literal language of the enactment." *Id.* (citing *Matter of Permit No. 36–7200*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992); *Local 1494 of Intern. Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978); *Messenger v. Burns*, 86 Idaho 26, 29–30, 382 P.2d 913, 915 (1963)).

Where the language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to construe the language. Where language of a statute or ordinance is ambiguous, however, this Court looks to rules of construction for guidance. *Lawless v. Davis*, 98 Idaho 175, 560 P.2d 497 (1977). It may also consider the reasonableness of proposed interpretations. *Umphrey v. Sprinkel*, 106 Idaho 700, 706, 682 P.2d

1247, 1253 (1983). "Constructions that would lead to absurd or unreasonably harsh results are disfavored." *Gavica v. Hanson*, 101 Idaho 58, 60, 608 P.2d 861, 863 (1980); *Lawless*, 98 Idaho at 177, 560 P.2d at 499.

"Language of a particular section need not be viewed in a vacuum. And all sections of applicable statutes must be construed together so as to determine the legislature's intent." *Lockhart v. Dept. of Fish and Game*, 121 Idaho 894, 897, 828 P.2d 1299, 1302 (1992) (quoting *Umphrey*, 106 Idaho at 706, 682 P.2d at 1253; *see also J.R. Simplot Co. v. Idaho State Tax Comm'n*, 120 Idaho 849, 853–54, 820 P.2d 1206, 1210–11 (1991)). Statutes and ordinances should be construed so that effect is given to their provisions, and no part is rendered superfluous or insignificant. *See Brown v. Caldwell Sch. Dist. No. 132*, 127 Idaho 112, 117, 898 P.2d 43, 48 (1995). There is a strong presumption of validity favoring the actions of a zoning authority when applying and interpreting its own zoning ordinances. *South Fork Coalition v. Bd. of Comm'rs*, 117 Idaho 857, 860, 792 P.2d 882, 885 (1990).

Based on the foregoing rules of construction, we hold that the Ordinance does not require the CUPs to be approved simultaneously with the PUD. Friends cites several sections of the Ordinance and related materials that it alleges support its assertion that such is required. As held by the district judge, however, none of these provisions provide that the CUP applications must be submitted simultaneously with the PUD.

First, Friends points to Table I–A, 2.h., which merely identifies a PUD as a conditional use rather than a permitted use; it does not indicate that the CUP and the PUD need be submitted at the same time, only that a CUP is required prior to development. Second, Friends asserts that section 3.04.02 of the Ordinance requires simultaneous approval. This section provides:

> Applications and procedures for all subdivisions and planned unit developments [PUDs] shall also be in accordance with the "Subdivision Regulations for Valley County Idaho" adopted April 29, 1970. Approval of a Conditional Use Permit

[CUP] shall be a prerequisite for such developments and said approval shall be deemed approval for the preliminary plat.

Friends argues that this quoted language means that the CUP is a "prerequisite" to the PUD and that it had to be included in the original application. The plain meaning of the language, however, is that a CUP is a prerequisite to development, which Valley County does not dispute, not that the CUP had to be submitted with the original application. Further, to read the language to mean what is advocated by Friends, as observed by the district judge, would read out Appendix C, which violates the canon of statutory interpretation that all sections should be read together, not in a vacuum.

Next, Friends points to § 3.03.09 of the Ordinance for support of its position, but nothing there is of assistance. Friends further argues that Appendix C, §§ A and F support its position. Section A requires that the PUD be developed under a single comprehensive plan, but it does not indicate that this means the CUPs must be submitted simultaneously with the PUD to be a simultaneous plan. Section F actually contemplates development in different phases. The same is true of section 215 of the Subdivision Regulations, cited by Friends in support of its position. Because no authority has been presented otherwise, and the zoning authority is given a presumption of validity in interpreting its own ordinances, this Court affirms the agency and the district court in their rulings that the CUPs did not have to be simultaneously submitted with the PUD for approval.

## B. Compatibility Ratings

■ Friends also argues that Valley County did not follow the compatibility rating guidelines of section 3.04 of the Ordinance. The Board's Conclusion of Law No. 17, however, specifically states that "[w]hen the Board's [compatibility] rating was combined with Planning and Zoning's rating[,][t]he average response value was +7.3125." The record indicates that this number was derived from consideration of comments presented at numerous public hearings, as well as comments and submissions from interested entities. Friends also argues that the Board erred by weighing the uses differently for the compatibility rating. Section B of Appendix A of the Ordinance, however, specifically grants discretion to the Board in this regard. The circumstances of the PUD merited the weighting system in the present case.

Friends also argues that the Commission erred in consideration of the application because there was a tie vote regarding approval of Question number 4, but the Commission ultimately recommended approval. Section 3.04.07 of the Ordinance only requires that the applicant establish compatibility by a preponderance of the evidence, not that a majority of votes finding compatibility on every question be cast. Thus, the Board's compatibility ratings and approval of the application were derived from the exercise of reason and were not arbitrary and capricious.

## C. Notice/Prejudice

■ Friends argues that the Board erred in approving the "concept approval" that was labeled in the application as a "CUP." Friends asserts that it was prejudiced by the foregoing, primarily because it was denied meaningful comment due to the alleged procedural irregularities, which resulted in a violation of its due process rights. *See Angstman v. City of Boise*, 128 Idaho 575, 578, 917 P.2d 409, 412 (Ct.App.1996). In *Angstman*, the Court of Appeals noted that due process applies to quasi judicial proceedings like those conducted by zoning boards, and such due process requires notice of the proceeding, a transcribable verbatim record of the proceedings, specific written findings of fact, and an opportunity to be present and rebut evidence. *Id.*

The application in the present dispute, however, regardless of the title, addressed the substance of the concept approval. Friends had notice of the contents of the application and its members were present at all of the public hearings, and they were allowed to comment over several months.

In *Taylor v. Board of County Com'rs*, 124 Idaho 392, 400, 860 P.2d 8, 16 (Ct.App.1993), the Court of Appeals opined that "substantial

compliance," rather than "strict compliance" with an applicable ordinance was sufficient. *Id.* The court in *Taylor* declined to reverse the board's decision approving a zoning change, despite its finding that the ordinance required detailed site plans to be submitted, which were not. The court thus concluded, "[w]e hold that there was substantial compliance with [the applicable ordinance], particularly in the absence of any showing that the deficiencies caused [the plaintiffs] any ensuing prejudice." In the present case, as in *Taylor*, there was at least substantial compliance, without a showing of prejudice by Friends to overturn the Board's approval, and thus Friends has not shown that its due process rights were violated.

### D. Open Space

Friends argues that the PUD does not meet the Ordinance requirement that more than fifty-percent of the development must be devoted to open space in order to maintain the agricultural character of the County. Friends admits that as written, the application contains over fifty-percent open space, but it asserts that most of the open space falls within Phase 5 of the development, with no guarantee that Carey will actually complete all five phases. Although the developer apparently has not committed to develop all five phases, or the phases in any particular order, he has already applied to develop the first part of Phase I. Once Phase I is developed, there is no order in which the developer could develop the phases where the open space would drop below fifty-percent of the total acreage, even if Phase 5 were never developed. Thus, there is substantial and competent evidence that the plan satisfies the open space requirement.

### E. Feasibility

Friends also argues that the sewer treatment facility was not shown to be feasible prior to approval of CUP 99–11 as required by the Ordinance. First, § 3.04.04 of the Ordinance is permissive regarding feasibility, not mandatory. It provides in part, "[s]uch permits [assuring the Commission that the project is technically feasible] *may* be required . . . ." (emphasis added). Even if

feasibility were required to be shown, however, there is ample evidence in the record to support the finding that the sewer processing facility was fully evaluated and found to be feasible. Richard Orton, who is an engineer with the firm of Toothman–Orton Engineers, testified in depth about the feasibility of the sewer system at the July 8, 1999, public hearing for CUP No. 99–11.

Friends also asserts that CUP 99–12 was improperly granted without evaluating impacts on wildlife or fencing needs. As the district judge noted, however, the record shows that these concerns were considered and addressed.

### F. Substantial and Competent Evidence to Support the Findings of Fact

This Court reviews an agency's Findings of Fact only to determine if they are supported by substantial and competent evidence.

Both a conditional use permit and a zoning certificate focus upon a specific parcel of property and, like variances and individual parcel rezones, are governed strictly by existing ordinance standards and requirements. *Therefore, when reviewing such decisions, the appellate court's function is to determine whether the government board's findings are supported by substantial evidence and, if so, whether the board's conclusions properly apply the zoning ordinance to the facts as found.* *Taylor v. Board of County Comm'rs*, 124 Idaho 392, 401, 860 P.2d 8, 17 (Ct.App.1993) (citing *Lowery v. Board of County Commissioners for Ada County*, 115 Idaho 64, 70, 764 P.2d 431, 437 (Ct.App.1988)) (emphasis added). Friends argues that the Board's Findings of Fact are not supported by substantial and competent evidence, but only gives one example of what it claims is an erroneous finding. It disputes the Board's finding that "[a]ccording to Appendix C, Section G3 of the [Ordinance] allows the Commission to modify the specifications, standards, and requirements of the ordinance for individual applications since it is recognized that each proposal for a PUD is unique." Although possibly this "finding" would have been more properly labeled a "conclusion of

law," it certainly is a proper conclusion based on a plain reading of the section, which provides in part, "the specifications, standards, and requirements ... may be subject to modification" by the Commission. When viewed as a whole, and as provided by the specific examples set forth in the foregoing sections, the findings are supported by substantial and competent evidence and are in compliance with the Ordinance.

## G. Compliance With the Comprehensive Plan

 Friends also disputes whether the CUPs were in compliance with the comprehensive plan, which is also an issue of fact.

> As we stated in *Bone* [*v. City of Lewiston*, 107 Idaho 844, 693 P.2d 1046 (1984)], the question of whether a zoning ordinance is "in accordance with" the comprehensive plan is a factual question which can be overturned only where the factual findings are clearly erroneous. The governing body charged with zoning-in this case the board of county commissioners-must make a factual inquiry to determine whether the requested rezone reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the present factual situation surrounding the request.

*Ferguson v. Board of County Commissioners for Ada County*, 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986).

Friends asserts that the CUPs do not comply with the comprehensive plan, pointing specifically to an Objective found within the comprehensive plan providing:

> OBJECTIVE: To facilitate residential development primarily within cities and identified city-impact areas, where it is feasible to provide adequately for health, safety and other public services. To insure that living spaces in outlying areas do not create health risks due to water supply or sewage disposal methods.

This Court has recognized in considering a similar claim, "the Local Land Use Planning Act was promulgated to ensure the orderly and effective development of land to the benefit of Idaho citizens." *Urrutia v. Blaine County*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000) (citing I.C. § 67–6502). "The Act indicates that a comprehensive plan and a zoning ordinance are distinct concepts serving different purposes. A comprehensive plan reflects the 'desirable goals and objectives, or desirable future situations' for the land within a jurisdiction." *Id.* (citing I.C. § 67–6508). "This Court has held that a comprehensive plan does not operate as legally controlling zoning law, but rather serves to guide and advise the governmental agencies responsible for making zoning decisions." *Id.* at 357–58, 2 P.3d at 742–43.

Friends argues that the sewage treatment proposal does not demonstrate compliance with the above stated objective because it asserts that feasibility of the facility was not properly examined. As noted by Friends, the Ordinance places the burden on the developer to show by a preponderance of the evidence compliance with the comprehensive plan. *See* § 3.04.07.(b.)(1). The record, however, is sufficient to support a finding of compliance with the second sentence of the objective concerning the sewage system.

Friends also argues that the development is not in compliance with the first sentence of the comprehensive plan objective of maintaining a rural atmosphere. The Board, however, expressly found compliance with that objective in its Findings of Fact and Conclusions of Law relating to CUP No. 99–12, and the record supports the Board's determination. Over 1000 of the 1335 total acres of the development are platted as open space, less than one half of one percent of the total acreage of the PUD is allocated to "commercial use." Thus, the Board's findings of compliance with the comprehensive plan objective challenged by Friends are supported by substantial and competent evidence in the record.

## H. Attorneys' Fees

 Friends asserts that it is entitled to attorneys' fees under Idaho Code § 12–117. That section provides: "In any administrative or civil judicial proceeding involving as adverse parties a state agency and a person, the court shall award the person reasonable attorneys' fees, witness fees and reasonable expenses, if the court finds in favor of the

person and also finds that the state agency acted without a reasonable basis in fact or law." The Court of Appeals has held this provision authorizes attorneys' fees when an appeal corrects mistakes an agency "should never have made." *Fox v. Board of County Comm'rs,* 121 Idaho 686, 692–93, 827 P.2d 699, 705–06 (Ct.App.1991) (citing I.C. § 12–117).

Friends also asserts that it is entitled to attorneys' fees under the private attorney general doctrine. Under this doctrine, attorney fees are justified where: (1) the litigation vindicated an important or strong public policy; (2) private enforcement was necessary in order to vindicate the policy and was pursued at significant burden to the plaintiff; and (3) a significant number of people stand to benefit from the decision. *See Hellar v. Cenarrusa,* 106 Idaho 571, 577–78, 682 P.2d 524, 530–31 (1984).

Inherent in both of these arguments for attorneys' fees is that Friends must prevail on appeal. Because we uphold the Board's determination, attorneys' fees are not applicable under either provision in the present case.

## IV. CONCLUSION

We affirm the district judge because the Commission and the Board substantially complied with the applicable ordinance and comprehensive plan, and Friends has not shown that it was prejudiced by any deviations from strict compliance. The Commission and the Board did not act in an arbitrary and capricious manner and their findings of fact are supported by substantial and competent evidence in the record. We award costs on appeal to Valley County and Carey.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.