**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 50888**

| | | |
|---|---|---|
| **IDAHO ASSOCIATION OF REALTORS, INC., an Idaho non-profit corporation; and JOHN and MICHELLE TAYLOR, a marital community,** | ) ) ) ) ) | |
| | ) | **Boise, January 2025 Term** |
| Petitioners-Appellants, | ) | |
| | ) | **Opinion filed: May 21, 2025** |
| v. | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| **CITY OF LAVA HOT SPRINGS, an Idaho municipality.** | ) ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Robert C. Naftz, District Judge.

The decision of the district court is <u>reversed</u>.

Risch Pisca, PLLC, Boise, attorney for Appellants. Jason S. Risch argued.

Hall Angell & Associates LLP, Idaho Falls; Cooper & Larsen Chartered, Pocatello, attorneys for Respondent. Gary L. Cooper argued.

_____

BEVAN, Chief Justice.

This case requires us to interpret the Short-term Rental and Vacation Rental Act, Idaho Code section 63-1801 to 1804, and Idaho Code section 67-6539 (collectively "Act"). Generally, the Act limits the kind of prohibitions or regulations municipalities may enforce with respect to short-term rentals. The City of Lava Hot Springs regulates short-term rentals based on whether they are occupied by an owner or manager. A short-term rental that is not occupied by an owner or manager is prohibited in residential zones and only permitted in the City's commercial zones. Bed and breakfast-type establishments that are occupied by the owner or manager are permitted in both commercial and residential zones.

This dispute arose when the City denied John and Michelle Taylor's application for a business license to operate a non-owner-occupied short-term rental in the City's residential zone. The Idaho Association of Realtors ("Realtors") and the Taylors sued the City alleging that its regulatory scheme violated the Act, which prohibits a city from enforcing any ordinance "that has the express or practical effect of prohibiting short-term rentals or vacation rentals in the city." But the Act also allows municipalities to enforce reasonable regulations of short-term rentals to "safeguard the public health, safety and general welfare in order to protect the integrity of residential neighborhoods in which short-term rentals . . . operate." The City brought a summary judgment motion based on its view that its regulation of short-term rentals did not violate the Act. The district court granted the City's motion, finding that the City's regulations did not have the express or practical effect of prohibiting short-term rentals and that the City's regulations were permissible under the health, safety and welfare exception in the Act. The Taylors and the Realtors appeal. We reverse the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lava Hot Springs is a small town along the Portneuf River in Eastern Idaho. Despite its small size, tourists flock to Lava Hot Springs to float the river, soak in hot pools, and camp. The Chamber of Commerce estimates that over 400,000 tourists visit the City each year. Some of these tourists bring noise, alcohol consumption, and other problems. Lava Hot Springs does not have a police department to help deal with these problems. Instead, the Bannock County Sheriff's Office provides deputies who enforce state statutes and the City's open container ordinance. However, the deputies do not issue citations for violating the City's building, zoning, business license, traffic, noise or parking ordinances. Lava Hot Springs has one code compliance officer who may only issue citations if he witnesses a violation. Additionally, the City has experienced a steady decline in permanent residents over the last two decades: from 521 in 2000 to 358 in 2020. The City Planner, Bruce Parker, attributes the city's decline in permanent residents to decreasing housing stock and increasing housing prices.[1]

---

[1] In 2022, Parker supervised a study conducted by graduate students at the University of Utah. The study found that Lava Hot Springs had approximately 259 housing units. Of those 259 units, 76 were listed as short-term rentals. This is about thirty percent of the City's housing supply. Additionally, the value of homes within Lava Hot Springs increased 262% from 2013 to 2022. About two-thirds of local residents shared that they were "very" or "extremely" concerned about short-term rentals. Other concerns included: parking, home affordability, noise, community cohesion, and safety.

2

In 2006, the City amended Lava Hot Springs' zoning code to include Ordinance 2006-5. Under that ordinance, the property at issue here is considered a vacation rental:

> VACATION RENTAL. (Also Tourist Home): A single family dwelling unit or multiple family dwelling unit, built or converted, where, for compensation, lodging facilities are provided for a duration for less than thirty (30) days, but not including a tent, recreational coach, motor home, camper, hotel, motel, hospital, yurt or nursing home.

(Capitalization in original). The ordinance prohibits vacation rentals in the City's residential zones. They are allowed in commercial (C-1 and C-2) zones, subject to certain regulatory requirements, such as the requirement to obtain a business license and limitations on on-street parking. The only vacation rentals allowed in residential zones must be owner or manager occupied, which are defined as "BED AND BREAKFAST" short term rentals. These dwellings are allowed in the R-3 residential zone and are a conditional use in the R-2 residential zone. They are also a permitted use in the C-1 and C-2 commercial zones, the same as vacation rentals.

The Taylors own two properties in the City. Realtors is a nonprofit corporation that strives "to protect private property rights, promote equal housing opportunity and preserve the American dream of homeownership." The Taylors sought a business license from the City to operate a "Vacation Rental" as defined under Ordinance 2006-5 at their property, which is located in the R-2 residential zone. As noted above, the City permits short-term rentals in its commercial zones, but it prohibits non-owner-occupied short-term rentals in its residential zones. The Taylors' property qualifies as a short-term rental under the Act. I.C. § 63-1803(4). The City Council denied the Taylors' application because the property was not located in a commercial zone, even after the Taylors pointed out the potential conflict between Ordinance 2006-5 and the Act, which prohibits counties and cities from enacting ordinances that have the effect of prohibiting short-term rentals. After this denial, the Realtors and the Taylors (hereinafter "Petitioners")[2] filed a petition for declaratory judgment—asking that the district court declare that the City's regulatory scheme violated the Idaho Constitution and exceeded the City's statutory authority under Idaho Code section 67-6539. The Petitioners also sought a writ of prohibition precluding the City from enforcing its ordinance. The Petitioners argued that Ordinance 2006-5 conflicted with the Act.

---

[2] Three other residents challenged the City's regulatory scheme. The district court consolidated the cases. The other three cases were dismissed with prejudice, and the plaintiffs in those cases have not appealed, leaving only Idaho Association of Realtors and the Taylors as petitioners.

The City moved for summary judgment, arguing that there was no conflict between the ordinance and the Act. The City included several declarations from residents about the problems short-term rentals pose to the community and referencing a study conducted with the oversight of Bruce Parker, the city planner. The City argued that the Act does not require the City to allow every type of short-term rental in every part of town. The City also argued that Ordinance 2006-5 does not prohibit vacation rentals but merely regulates them, and that the regulations are necessary to promote the health and welfare of the citizens and visitors to Lava Hot Springs. Thus, the ordinance does not violate the Act.

The district court agreed with the City, concluding that "[b]ecause at least one of the three types of short-term rentals identified by [Idaho Code section] 63-1803(4) are allowed within residential zones, the City has not prohibited short-term rentals in violation of Idaho Code [section] 67-6539." The district court also found that Ordinance 2006-5 was necessary "to safeguard the public health, safety and general welfare of the City's residents and visitors and . . . to protect the integrity of residential neighborhoods." The district court noted that the Petitioners did not provide any evidence to dispute the need for the regulations. Summary judgment was granted in favor of the City. The Petitioners timely appealed.

## II. ISSUES ON APPEAL

1.      Whether Ordinance 2006-5 violates the Short-term Rental and Vacation Rental Act.

2.      Whether either party is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

"The interpretation of a statute is a question of law over which this Court exercises free review." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 581, 416 P.3d 951, 953 (2018) (alteration and citation omitted). "In addition, this Court reviews an appeal from an order of summary judgment *de novo*, and this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Id.* Summary judgment is proper if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

## IV. ANALYSIS

### A.      Ordinance 2006-5 violates the Short-term Rental and Vacation Rental Act.

The standard this Court applies when interpreting statutes is well established:

Interpretation of a statute begins with an examination of the statute's literal words. Where the language of a statute is plain and unambiguous, courts give effect to the

4

statute as written, without engaging in statutory construction. Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations.

*City of Idaho Falls*, 163 Idaho at 582, 416 P.3d at 954. "The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings." *Id.* "[T]he Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *TCR, LLC v. Teton Cnty.*, 174 Idaho 624, ___, 559 P.3d 302, 319 (2024) (quoting *Nelson v. Evans*, 166 Idaho 815, 820, 464 P.3d 301, 306 (2020)). Accordingly, we turn first to the language of the Act.

The Act defines a short-term rental or vacation rental as a dwelling offered for a fee for thirty days or less:

> "Short-term rental" or "vacation rental" means any individually or collectively owned single-family house or dwelling unit or any unit or group of units in a condominium, cooperative or timeshare, or owner-occupied residential home that is offered for a fee and for thirty (30) days or less. Short-term rental or vacation rental does not include a unit that is used for any retail, restaurant, banquet space, event center or another similar use.

I.C. § 63-1803(4). The Act limits how cities may regulate short-term rentals or vacation rentals:

> Neither a county nor a city may enact or enforce any ordinance that has the express or practical effect of prohibiting short-term rentals or vacation rentals in the county or city. A county or city may implement such reasonable regulations as it deems necessary to safeguard the public health, safety and general welfare in order to protect the integrity of residential neighborhoods in which short-term rentals or vacation rentals operate. A short-term rental or vacation rental shall be classified as a residential land use for zoning purposes subject to all zoning requirements applicable thereto.

I.C. § 67-6539(1). Thus, no city may enact or enforce any ordinance that has the express or practical effect of prohibiting either short-term or vacation rentals *in the city*. A city may, however, enact "reasonable regulations" to "safeguard the public health, safety and general welfare in order to protect the integrity of residential neighborhoods in which short-term rentals or vacation rentals operate." *Id*.

The City prevailed below by arguing that its ban on vacation rentals in the City's residential zones is permissible because its ordinance allows bed and breakfasts, one of the three types of short-term rentals defined in Idaho Code section 63-1804(4), in its residential zones. The argument is essentially that, so long as at least one type of short-term rental is allowed in its residential zones, the City has complied with the Act. We disagree.

5

"Language of a particular section need not be viewed in a vacuum. And all sections of applicable statutes must be construed together so as to determine the legislature's intent." *Friends of Farm to Mkt. v. Valley Cnty.*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002) (quotation marks and citation omitted). Although sections 63-1801, *et seq.* and section 67-6539 are in different titles of the Idaho Code, we do not look at each provision in a vacuum because they were enacted in the same bill, which dealt exclusively with short-term rentals. *See* H.B. 216, 2017 Idaho Sess. Laws 591–92.

The plain language of the Act provides clear understanding of the intent of our legislature as stated in Idaho Code section 63-1802:

> This act is designed to promote access to short-term rentals and vacation rentals by limiting local governmental authority to prohibit these beneficial property uses, or to specifically target them for regulation, except in circumstances necessary to safeguard public health and welfare. This act is also designed to preserve personal property rights and promote property owner access to platforms for offering their properties as short-term rentals and vacation rentals, and enhancing local tax revenue by permitting platforms to assume tax collection and remittance responsibilities.

The legislative intent in adopting the Act is not just to foster access to some short-term or vacation rentals within a city, but to all of them. The Act "is designed to promote access to [both] short-term rentals *and* vacation rentals by limiting local governmental authority to prohibit these beneficial property uses, or to specifically target them for regulation . . . ." *Id.* (emphasis added). The Act is also to be construed to "preserve personal property rights and promote property owner access to platforms for offering their properties as . . . vacation rentals . . . ." *Id.* We thus take the legislature at its word: the Act expressly disallows any city regulation that "has the express or practical effect of prohibiting short-term rentals *or* vacation rentals in the . . . city." I.C. §67-6539(1).

The City advocates that the use of the disjunctive language in the statute, defining short term rentals as "any individually *or* collectively owned single-family house *or* dwelling unit *or* any unit or group of units in a condominium, cooperative or timeshare, *or* owner-occupied residential home," I.C. § 63-1803(4) (emphasis added), allows it to prohibit certain types of short-term or vacation rentals as long as at least one of the listed categories remains permitted. We disagree. First, because the statute prohibits restrictions on either "short-term rentals *or* vacation rentals," it necessarily applies to all forms of short-term rentals encompassed by the definition, regardless of whether they are owner occupied. Second, nothing in the Act authorizes the City's

spot-zoning approach, in which vacation rentals are selectively prohibited in residential zones—precisely the areas where such rentals are most naturally situated.

The City's retort, which the district court accepted, is that notwithstanding the broad-ranging scope of the Act, the City is explicitly granted the right to "implement such reasonable regulations as it deems necessary to safeguard the public health, safety and general welfare in order to protect the integrity of residential neighborhoods in which short-term rentals or vacation rentals operate." We acknowledge the numerous declarations from City residents and employees about the effects that vacation rentals can have on City residents. Even so, the second and third sentences of section 67-6539(1) reinforce our reading of the Act.

Regulations are distinct from prohibitions. To prohibit is to "forbid" or "prevent, preclude, or severely hinder." *Prohibit*, BLACK'S LAW DICTIONARY (12th ed. 2024). To regulate is to control, especially through the implementation of rules. *Regulate*, BLACK'S LAW DICTIONARY (12th ed. 2024). Under the plain language of the Act, cities are free to implement necessary regulations to safeguard the public health, safety, and general welfare of residential neighborhoods. I.C. § 67-6539(1). We express no opinion about what might constitute a reasonable regulation. But such regulations may not amount to express or practical prohibitions on any one of the three types of short-term rentals defined by section 63-1803(4).

We thus hold that Ordinance 2006-5 violates the Short-term Rental and Vacation Rental Act. Ordinance 2006-5 expressly prohibits the operation of vacation rentals, a type of short-term rental, in the City's residential zones. As such, Ordinance 2006-5 violates Idaho Code section 67-6539, which precludes the City from enacting any ordinance that has the express effect of prohibiting short-term rentals in the City. Accordingly, Ordinance 2006-5 is invalidated. *KGF Dev., LLC v. City of Ketchum*, 149 Idaho 524, 531, 236 P.3d 1284, 1291 (2010).

## B.      Neither party is awarded attorney fees on appeal.

The Petitioners do not request attorney fees on appeal, but they do request costs under Idaho Appellate Rule 40. The City requests attorney fees on appeal pursuant to Idaho Code sections 12-121 and 12-117. Because the City has not prevailed on appeal, we decline to award attorney fees. Costs are awarded to Petitioners as the prevailing party under Idaho Appellate Rule 40.

### V. CONCLUSION

We reverse the district court's ruling and vacate its grant of summary judgment. Costs on appeal are awarded to Petitioners.

Justices BRODY, MOELLER, ZAHN, and MEYER CONCUR.